No. 14-4089

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

PBS COAL, INC. et al,

Employer/Carrier-Petitioner,

v.

KENNETH DAVIS

Claimant-Respondent

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR,

Party-in-Interest

Petition for Review of August 26, 2014 Decision of the Benefits Review Board

## BRIEF IN SUPPORT OF APPEAL

Sean Epstein, Esquire
Pa. I.D. No. 68804
PIETRAGALLO GORDON ALFANO
 BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219
(412) 263-2000
Counsel for Employer/Carrier-Petitioner

# **TABLE OF CONTENTS**

**Page**

TABLE OF CITATIONS ................................................................................. 1

SUBJECT MATTER AND APPELLATE JURISDICTION ....................................... 2

STATEMENT OF THE ISSUES ........................................................................ 3

STATEMENT OF THE CASE .......................................................................... 4

STATEMENT OF THE FACTS ......................................................................... 6

STATEMENT OF RELATED CASES AND PROCEEDINGS ................................. 8

STANDARD OF REVIEW .............................................................................. 9

SUMMARY OF THE ARGUMENT .................................................................. 10

ARGUMENT ............................................................................................. 11

      The Administrative Law Judge erred by awarding benefits to the
claimant when the substantial competent evidence of record did not
support the conclusion that claimant's impairment arose from his coal
mine employment .................................................................................. 11

CONCLUSION ........................................................................................... 19

CERTIFICATION OF BAR MEMBERSHIP ....................................................... 20

CERTIFICATE OF COMPLIANCE ................................................................. 21

CERTIFICATE OF FILING AND SERVICE ...................................................... 22

Petition for Review filed on behalf of the defendant/employer from the
the Decision and Order of the Benefits Review Board filed on 10/1/14 ............ A 1

Decision of the Benefits Review Board dated 8/25/14 .................................. A 3

ALJ's Order dated 8/5/13 .......................................................................... A 16

# TABLE OF CITATIONS

Page

Cases

Big Branch Resources, Inc. v. Ogle, 737 F.3d 1063 (6th Circuit 2013)............ 13, 18

Hill v. Director, Office of Workers' Compensation Programs, U.S. Department
of Labor, 562 F3d 264 (3d Cir. 2008)............................................................ 9, 17-18

Statutes

20 C.F.R. § 718.305(a) ....................................................................................14, 17
20 C.F.R. § 718.305(d) ....................................................................................12, 16
30 U.S.C. § 921(c)(4) ........................................................................ 5, 7, 11, 16, 17
30 U.S.C. § 932(a) ................................................................................................. 2
33 U.S.C. § 921(b) ................................................................................................. 2
33 U.S.C. § 921(c) ................................................................................................. 2
F.R.A.P. 32(a)(7)(B).............................................................................................21
F.R.A.P. 32(a)(7)(C).............................................................................................21

## SUBJECT MATTER AND APPELLATE JURISDICTION

This case arises from the Petition for Review filed from the August 26, 2014 Decision of the Benefits Review Board. In that Decision, the Benefits Review Board affirmed the Decision of the Administrative Law Judge, granting benefits to the miner. 30 U.S.C. § 932(a) and 33 U.S.C. § 921(b) grants the U.S. Department of Labor, Office of Coal Workers' Compensation Programs and Benefits Review Board jurisdiction to hear and adjudicate matters arising in this claim. 33 U.S.C. § 921(c) grants this Court jurisdiction to hear this appeal. The employer/carrier filed this appeal timely, as it was filed within the 60 day limit imposed by statute. This Court has jurisdiction to review the Board's determination pursuant to 33 U.S.C. § 921(c).

## STATEMENT OF THE ISSUES

I.    Whether the Administrative Law Judge erred by awarding benefits to the claimant when the substantial competent evidence of record did not support the conclusion that claimant's impairment arose from his coal mine employment?

The employer/carrier raised this issue before the Administrative Law Judge and the Benefits Review Board. Both the Administrative Law Judge and the Benefits Review Board found against the employer/carrier on this issue.

Suggested Answer: Yes

## STATEMENT OF THE CASE

This matter is before this Honorable Court pursuant to an Appeal filed by the Defendant/Employer, PBS Coals, Inc., and its insurance carrier, from the Decision of the Benefits Review Board dated August 26, 2014. The Board affirmed the Decision and Order of Administrative Law Judge Drew A. Swank issued August 5, 2013. (A 1-2). In the Decision, the ALJ granted benefits to the miner. (A 19).

The miner, Kenneth A. Davis, filed the instant living miner's claim for benefits on April 19, 2010. (A 50-54). The claim for benefits was granted, pursuant to a Proposed Decision and Order issued by the District Director dated June 14, 2011. (A 56). The employer filed a timely request for a hearing before an Administrative Law Judge following this determination.

The living miner's claim for benefits was assigned to ALJ Swank. A formal hearing was held before the Judge on November 14, 2012. The parties agreed that the issues being contested in the instant case included whether the claimant had a totally disabling respiratory impairment, whether the totally disabling respiratory impairment was caused by pneumoconiosis, and whether there had been a sufficient change in condition since claimant's previously denied Application for Benefits. (A 17-18).

ALJ Swank issued a Decision and Order dated August 5, 2013 granting the miner's claim for benefits. The Judge concluded that the claimant met his burden

of establishing total disability and more than 15 years of coal mine employment, meaning that he was entitled to the presumption at 30 U.S.C. § 921(c)(4), that his total disability resulted from pneumoconiosis. The Judge further found that the employer did not rebut this presumption by showing that claimant did not have pneumoconiosis or that his impairment did not arise from coal mine employment. The Judge ordered that the miner was entitled to black lung benefits. (A 18-19).

The employer filed an appeal from the Judge's decision. The Benefits Review Board (BRB) issued its decision on August 26, 2014. The BRB affirmed the Judge's determination that the miner was entitled to benefits. (A 11-12).

It is from this determination that the employer has appealed. The employer maintains that, based upon the testimony offered by Dr. Fino and Dr. Kaplan, the Judge should have found that the employer established that the miner's impairment did not arise from his coal mine employment.

## STATEMENT OF THE FACTS

This matter is before this Honorable Court pursuant to an appeal filed by the defendant/employer, PBS Coals, Incl., and its insurance carrier from the Decision and Order of the Benefits Review Board (BRB).  (A 1-2).  The BRB affirmed the decision of Administrative Law Judge (ALJ) Odegard, issued on April 5, 2013.  In that Decision and Order, the ALJ granted benefits to the miner.  (A 19).

The miner, Kenneth A. Davis, had initially filed a claim for living miner's benefits on April 19, 2010.  (A 50-54).  The claim for benefits was granted, pursuant to a Proposed Decision and Order issued by the District Director dated June 14, 2011.  (A 56).  The employer filed a timely request for a hearing before the Administrative Law Judge following that determination.

The living miner's claim for benefits was assigned to ALJ Swank.  A formal hearing was held before the Judge on November 14, 2012.  The parties agreed that the issues being contested in the instant case included whether the claimant had a totally disabling respiratory impairment, whether any totally disabling respiratory impairment was caused by pneumoconiosis, and whether there had been a sufficient change in condition since claimant previously denied application for benefits.  (A 17-18).

ALJ Swank issued a Decision and Order dated August 6, 2013, granting the miner's claim for benefits.  The Judge concluded that claimant met his burden of

establishing total disability and more than 15 years of coal mine employment, meaning that he was entitled to the presumption at 30 U.S.C. § 921(c)(4), that his total disability resulted from pneumoconiosis. (A 18-19).

The employer filed an appeal from the ALJ's decision. The Benefits Review Board issued its decision on August 26, 2014, affirming the Judge's decision. (A 11-12).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This particular case has not been before this Honorable Court previously. The employer is not aware of any related cases or proceedings currently pending before this Honorable Court.

## STANDARD OF REVIEW

In reviewing the Board's decision, this Court must review the record and determine whether the ALJ's findings were rationale, consistent with applicable law and supported by the substantial evidence of the record considered as a whole. Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusions." This Court exercised its plenary review over the ALJ's legal conclusions that were adopted by the Benefits Review Board. Hill v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor, 562 F3d 264, 268 (3d Cir. 2008).

## SUMMARY OF THE ARGUMENT

The employer has maintained that the ALJ committed an error of law in determining that the miner was entitled to an award of benefits. The Judge erred in finding that the employer failed to rebut the presumption by showing that claimant did not have pneumoconiosis or that his impairment did not arise from the coal mine employment. The employer maintains that the Judge should have found, based upon the testimony presented by the employer's medical witnesses, Dr. Gregory Fino and Dr. Peter Kaplan, that the employer established that claimant's impairment did not arise from coal mine employment.

**ARGUMENT**

I.    **The Administrative Law Judge erred by awarding benefits to the claimant when the substantial competent evidence of record did not support the conclusion that claimant's impairment arose from his coal mine employment.**

Under 30 U.S.C. § 921(c)(4), a miner with 15 years or more of employment in an underground coal mine (or the equivalent) and who is totally disabled due to a respiratory impairment, can enjoy the rebuttal presumption that the miner's disability or death was due to pneumoconiosis.   The employer can rebut this presumption by establishing either that the miner did not have pneumoconiosis or that his respiratory impairment was not related to his coal mine employment.  The Judge in the instant case found that the claimant established that he was entitled to this presumption.   The Judge further found that the employer failed to rebut this presumption by failing to show that claimant's impairment did not arise from the coal mine employment.   The employer maintains that this determination made by the Judge was not supported by the substantial competent evidence of record.

In reviewing the medical evidence submitted in this case, the Judge found that the miner had clinical pneumoconiosis and that claimant's total pulmonary or respiratory disability was the result of his past coal mine employment.  (A 18-19). In support of its position that the claimant was not entitled to an award of benefits, the employer offered the reports and depositions of Dr. Gregory Fino and Dr. Peter Kaplan.  The Judge found that both Dr. Kaplan and Dr. Fino "conceded" that they

11

could not rule out coal dust as a cause of at least part of the claimant's pulmonary/respiratory impairment. According to the Judge, the position of both of these doctors was that the contribution of the damage to claimant's pulmonary/respiratory functioning caused by coal dust inhalation was clinically insignificant when compared to the damage caused by claimant's continued smoking. The Judge specifically found as follows:

> As neither physician can state that coal dust exposure is not responsible for at least a part of claimant's pulmonary/respiratory impairment, the presumption at 20 C.F.R. § 718.305(a) is not rebutted. While they are undoubtedly correct that from a clinical standpoint claimant's smoking is primarily responsible for his pulmonary/respiratory demise, the regulation does not provide for that fact alone to rebut the presumption.

The Judge concluded that this testimony was not sufficient to rebut the presumption enjoyed by the claimant. (A 33-34).

The employer maintains that the testimony offered by Dr. Kaplan and Dr. Fino established that the cause of claimant's total disability did not arise in whole or in part because of dust exposure in the miner's coal mine employment. 20 C.F.R. § 718.305(d) provides as follows:

> Where the cause of death or total disability did not arise in whole or in part out of dust exposure and the miner's coal mine employment or the evidence establishing that the miner does not or did not have pneumoconiosis, the presumption will be considered rebutted. However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

The courts have held that in order to rebut the presumption that a miner's total disability is due to pneumoconiosis, the employer must rule out pneumoconiosis as a cause of the miner's pulmonary disability. The U.S. Court of Appeals for the Sixth Circuit has held that, in order to rebut this presumption, the employer must "rule out" coal mine employment as a cause of the miner's disability. Big Branch Resources, Inc. v. Ogle, 737 F.3d 1063, 1071 (6th Circuit 2013). Despite the findings that the ALJ made with respect to the testimony given by both Dr. Kaplan and Dr. Fino, the ALJ erred by failing to determine whether these doctors totally excluded pneumoconiosis as a cause of the claimant's impairment.

The ALJ should have found that both Dr. Fino and Dr. Kaplan concluded that the claimant's coal dust exposure did not play a significant role in his impairment. Dr. Fino specifically concluded that the claimant would be just as disabled as he is today had he never set foot in the coal mine. Dr. Fino agreed that the diagnostic studies showed that the claimant was not capable of performing his last job in the coal mining industry. The doctor opined, however, that this disability was not due to coal dust exposure but was rather due to emphysema caused by cigarette smoking. Dr. Fino ultimately concluded that while the claimant did have a totally disabling respiratory impairment which would prevent him from performing his last job in the coal mining industry, the claimant's coal

13

mine dust exposure did <u>not</u> play any clinically significant role in this disability.

Dr. Fino testified as follows:

> Q. Doctor, in your opinion though does [the miner] have a disabling respiratory impairment based upon your review of all of the evidence that you had?

> A. Yes.

> Q. Doctor, to what do you attribute that disabling respiratory impairment?

> A. I think - not I think. I believe that it is secondary to cigarette smoking, and I do not believe that coal mine dust played a clinically significant role in the disability.

> Q. Again, doctor, can you explain for the Judge the basis of that opinion?

> A. Certainly all of the reversible changes, blood gas changes, and spirometry changes are not due to coal mine dust. So we are left - if we take all of that into consideration, with left with a mild obstruction and significant reduction and diffusion, and I believe that's emphysema.

> And based on my reasoning before about not having evidence of significant dust retention in the lungs and taking into consideration the smoking history, I do not think that coal mine dust has played a clinically significant role in the disabling emphysema.

Deposition of Dr. Fino, pp. 16-17. (A 82-83).

Dr. Fino maintained this opinion on cross examination, explaining that smoking was the clinically significant factor for the claimant's impairment and that coal mine dust, albeit may be contributing in numerical reduction of the FEV1, was <u>not</u>

14

clinically significant. Dr. Fino maintained that the claimant would have been as disabled, had he never set foot in the mines. (Dr. Fino depo, p. 22) (A 88).

Like Dr. Fino, Dr. Kaplan opined that coal dust exposure did not play a significant role in the miner's impairment. Dr. Kaplan testified that, from a pulmonary standpoint, the miner was not disabled from his last job as a heavy equipment operator. Dr. Kaplan maintained that claimant's moderate obstructive lung disease was primarily due to his cigarette smoking history, and not his coal mine dust exposure. While Dr. Kaplan stated that he could not rule out some contribution from coal mine dust exposure to claimant's obstructive lung disease, in his view, the contribution from coal mine dust was <u>not</u> substantial. Dr. Kaplan testified as follows:

Q. Doctor, in this particular case you believe that the emphysema was substantially contributed to or caused by coal dust exposure?

A. It could have contributed in a minor way, but he would be similarly impaired. He would not be able to walk any faster or do anything different if he had been - if he had never worked in the coal mine industry. He worked for 26 years on the surface which is certainly not as much of a dust exposure as working underground, for example, at the face of roof bolting where you get very major dust exposure in a confined space.

So I just don't think that - I would attribute his emphysema primarily to his COPD - his COPD - his emphysema to his cigarette smoking rather than any major contribution from coal dust.

Dr. Kaplan depo, pp. 13-14. (A 160-161).

Dr. Kaplan opined that the miner was disabled from performing his last job, but that coal mine dust exposure did not play any role in bringing about that disability. Dr. Kaplan maintained that this disability was the result of the miner's heart disease, dementia, and his COPD to some degree as well. (Kaplan depo, p. 14) (A 161). Dr. Kaplan did concede on cross examination that, at the very most, 10% of the claimant's "disease process" would be due to his coal mine dust exposure. (Kaplan depo, pp. 17-18).

It is the employer's position that the Judge misinterpreted 20 C.F.R. § 718.305(d). In one portion of his decision, the ALJ found as follows, when discussing the presumption at 30 U.S.C. § 921(c)(4). The Judge noted that:

> Once invoked the burden shifts to the party opposing entitlement to demonstrate that preponderance of the evidence either: (1) the miner's disability does not, or did not, arise out of coal mine employment; or (2) the miner does not or did not suffer from pneumoconiosis.

(A 33).

Later, as part of the same discussion, the Judge concluded that in the instant case because he had found that the miner in the instant case had established the existence of coal workers' pneumoconiosis, the single issue to be determined was "whether claimant's total disability arises from his coal workers' pneumoconiosis due to his past coal mine employment". (A 33). Later, however, when discussing the specific testimony provided by the medical witnesses in this case, the Judge found as follows:

16

Both physicians therefore conceded they cannot rule out coal dust as a cause of at least part of claimant's pulmonary/respiratory impairment – which Dr. Fino stated was disabling and Dr. Kaplan stated was not. Their position, however, is that the contribution of the damage to claimant's pulmonary/respiratory functioning caused by coal dust inhalation is clinically insignificant compared to the damage caused by claimant's continued smoking. Unfortunately for employer, however, 20 C.F.R § 718.305(d) provides that for the presumption of 20 C.F.R. § 718.305(a) to be rebutted, the cause of total pulmonary/respiratory disability cannot be due in whole or in part to coal dust exposure from the miner's coal mine employment.

(A 34).

The Judge's interpretation of this Section would basically preclude any type of defense from any employer. In just two pages of the ALJ's decision, he changed the employer's burden from establishing that the miner's disability did not arise out of coal mine employment to establishing that the cause of the miner's disability cannot be due in whole or in part to any coal dust exposure. It remains the employer's position that, when the actual Regulation at 20 C.F.R. § 718.305(d) is read, the Judge should have found that the testimony offered by Dr. Fino and Dr. Kaplan established that the cause of claimant's total disability did not arise in whole or in part out of dust exposure in the claimant's coal mine employment. Based upon this finding, the Judge should have found that the employer presented competent credible evidence to rebut the presumption.

In Ogle, the 6th Circuit Court of Appeals found that the ALJ had properly found that the rebuttable presumption at 30 U.S.C. 921 (c)(4) shifts the burden to

the employer to demonstrate by a preponderance of the evidence either that the miner's disability does not, or did not, arise out of coal mine employment; or that the miner does not, or did not, suffer from pneumoconiosis. As outlined above, the Court in Ogle further held that, in order to rebut this presumption, the employer must "rule out" coal mine employment as a cause of the miner's disability. Ogle, 737 F.3d at 1071. It is the employer's contention that the testimony presented by both Dr. Fino and Dr. Kaplan satisfied this burden. Both Dr. Fino and Dr. Kaplan ruled out coal mine dust exposure as a cause for the claimant's disability. (A 82-83, 88, 160-161).

It remains the employer's position that there was no substantial competent evidence to support the Judge's determination that the employer failed to show that the miner's impairment did not arise from coal mine exposure. Based upon the credible opinions of Dr. Fino and Dr. Kaplan, the ALJ should have found that the evidence of record showed that the miner's impairment was not related to his work in the coal mine.

Accordingly, the defendant/employer requests that the ALJ's August 5, 2013 Decision and Order be reversed.

## CONCLUSION

For the aforesaid reasons, the Decision of the Black Lung Benefits Review Board should be reversed.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:   /s/ Sean B. Epstein
Sean B. Epstein, Esquire
Pa. I.D. No. 68804

One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
(412) 263-2000

Counsel for Employer/Carrier-Petitioner

## **CERTIFICATION OF BAR MEMBERSHIP**

Sean B. Epstein, Esquire, whose name appears on the cover of this Brief is a member of the bar of this Court and hereby certifies this fact.

/s/ Sean B. Epstein
SEAN B. EPSTEIN, ESQUIRE
Counsel for Employer/Carrier-Petitioner

## CERTIFICATE OF COMPLIANCE

I certify under F.R.A.P. 32(a)(7)(C) that this Brief complies with the type/volume limitations of F.R.A.P. 32(a)(7)(B) and that, according to the word processing program used to prepare the Brief, and exclusive of the Table of Contents, Table of Citations, any Addendum containing statutes, rules, or regulations, and the required Certificates, this Brief of Appellee contains 3,194 words.

I also certify that a Norton Symantec Antivirus scan was performed on this document and it is found to contain no virus.

I further certify that this Brief is identical to the electronic/pdf version of the Brief filed on this same date.

/s/ Sean B. Epstein
SEAN B. EPSTEIN, ESQUIRE
Counsel for Employer/Carrier-Petitioner

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of February, 2015, I filed with the Clerk's Office of the United States Court of Appeals for the Third Circuit, via United States First Class Mail, postage prepaid and electronic copy of the same in pdf format, the required number of copies of this Brief of Appellee, and further certify that I served via United States First Class Mail, postage prepaid, the required copies of the same to the following:

> Heath M. Long, Esquire
> Pawlowski, Bilonick & Long
> 603 North Julian Street
> Ebensburg, PA  15931-0658
>
> Michael Chance, District Director
> U.S. Department of Labor
> Room C-3516, NDOL
> 200 Constitution Avenue, NW
> Washington, DC  20210
>
> Ann Marie Scarpino, Esquire
> Office of the Solicitor
> Suite N-2119, FPB
> 200 Constitution Avenue, NW
> Washington, DC  20210
>
> Clerk of the Board
> U.S. Department of Labor
> Benefits Review Board
> P.O. Box 37601
> Washington, DC  20013-7601

Seena Foster, Esquire
Office of Administrative Law Judges
Techworld Plaza
800 K Street, NW, Suite 400
Washington, DC  20210


Respectfully submitted,

PIETRAGALLO GORDON ALFANO
  BOSICK & RASPANTI, LLP


By:    /s/ Sean B. Epstein
       Sean B. Epstein
       Pa. I.D. No. 68804
       Counsel for Employer/Carrier-Petitioner

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

PBS Coals, Inc. and
Rockwood Casualty Insurance Company,

        Employer/Carrier-Petitioner

v.

Kenneth Davis

        Claimant-Respondent

and

Director Office of Workers' Compensation
Programs, United States Department of
Labor,

        Party-in-Interest

No. _____ of 2013

Petition for Review

## PETITION FOR REVIEW

      PBS Coals, Inc. and its insurance carrier, Rockwood Casualty Insurance Company,

hereby petitions this Honorable Court to review the not-published Decision and Order of the

Black Lung Benefits Review Board granting the living miner's claim for benefits, entered on

August 26, 2014 at BRB No. 13-0545 BLA and attached herewith.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:_____

Sean B. Epstein, Esquire
PA I.D. No. 68804
Lee Ann Rhodes, Esquire
PA I.D. No. 80203
Attorneys for the Petitioners
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA 15219
(412) 263-2000
SBE@Pietragallo.com
LAR@Pietragallo.com

A 0001

## CERTIFICATE OF SERVICE

I hereby certify that I am this 1st day of October, 2014 serving the foregoing document upon the persons and in the manner indicated below:

## SERVICE BY FIRST CLASS MAIL AS FOLLOWS:

Heath M. Long, Esquire
Pawlowski, Bilonick & Long
603 North Julian Street
Ebensburg, PA 15931-0658

Michael Chance, District Director
U.S. Department of Labor
Room C-3516, NDOL
200 Constitution Avenue, NW
Washington, DC 20210

Ann Marie Scarpino, Esquire
Office of the Solicitor
Suite N-2119, FPB
200 Constitution Avenue, NW
Washington, DC 20210

Clerk of the Board
U.S. Department of Labor
Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601

Seena Foster, Esquire
Office of Administrative Law Judges
Techworld Plaza
800 K Street, NW, Suite 400
Washington, DC 20210

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By: _____
Sean P. Epstein, Esquire
Lee Ann Rhodes, Esquire
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA 15219
(412) 263-2000
SBE@Pietragallo.com
LAR@Pietragallo.com

A 0002

**U.S. Department of Labor**

Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



BRB No. 13-0545 BLA

| | |
|---|---|
| KENNETH A. DAVIS | ) |
| Claimant-Respondent | ) **NOT PUBLISHED** |
| | ) |
| v. | ) |
| | ) |
| PBS COALS INCORPORATED | ) |
| and | ) |
| | ) |
| ROCKWOOD CASUALTY INSURANCE COMPANY | ) DATE ISSUED: _AUG 2 6 2014_ |
| | ) |
| Employer/Carrier-Petitioners | ) |
| | ) |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR | ) |
| Party-in-Interest | ) DECISION and ORDER |

Appeal of the Decision and Order Awarding Benefits of Drew A. Swank, Administrative Law Judge, United States Department of Labor.

Heath M. Long (Pawlowski, Bilonick & Long), Ebensburg, Pennsylvania, for claimant.

Sean B. Epstein (Pietragallo Gordon Alfano Bosick & Raspanti, LLP), Pittsburgh, Pennsylvania, for employer/carrier.

Ann Marie Scarpino (M. Patricia Smith, Solicitor of Labor; Rae Ellen James, Associate Solicitor; Michael J. Rutledge, Counsel for Administrative Litigation and Legal Advice), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: HALL, Acting Chief Administrative Appeals Judge, SMITH and McGRANERY, Administrative Appeals Judges.



PER CURIAM:

Employer/carrier (employer) appeals the Decision and Order Awarding Benefits (2011-BLA-6166) of Administrative Law Judge Drew A. Swank, rendered on a subsequent claim filed pursuant to the provisions of the Black Lung Benefits Act, as amended, 30 U.S.C. §§901-944 (2012) (the Act). Claimant filed this claim on April 19, 2010.[1] Director's Exhibit 3.

In his Decision and Order, issued August 5, 2013, the administrative law judge first found that claimant established the existence of clinical pneumoconiosis based on the new x-ray evidence, pursuant to 20 C.F.R. §718.202(a)(1). Next, applying amended Section 411(c)(4), 30 U.S.C. §921(c)(4),[2] the administrative law judge credited claimant with at least fifteen years of qualifying coal mine employment,[3] and found that new medical opinion evidence established that claimant has a totally disabling respiratory or pulmonary impairment pursuant to 20 C.F.R. §718.204(b)(2)(iv). The administrative law judge therefore found that claimant invoked the rebuttable presumption of total disability due to pneumoconiosis set forth at Section 411(c)(4).

The administrative law judge also found that employer did not rebut the Section 411(c)(4) presumption. Specifically, the administrative law judge found that, because the

---

[1] Claimant's prior claim, filed on April 21, 2004, was finally denied by the district director on November 12, 2004, for failure to establish any element of entitlement. Director's Exhibit 1.

[2] Congress enacted amendments to the Black Lung Benefits Act, which apply to claims filed after January 1, 2005, that were pending on or after March 23, 2010. Relevant to this case, Congress reinstated Section 411(c)(4) of the Act, which provides a rebuttable presumption that a miner is totally disabled due to pneumoconiosis in cases where fifteen or more years of qualifying coal mine employment and a totally disabling respiratory impairment are established. 30 U.S.C. §921(c)(4) (2012). Qualifying coal mine employment is employment in underground coal mines, or in conditions "substantially similar to conditions in an underground mine." *Id.* The Department of Labor revised the regulations to implement the amendments to the Act. The revised regulations became effective on October 25, 2013, and are codified at 20 C.F.R. Parts 718, 725 (2014).

[3] Claimant's coal mine employment was in Pennsylvania. Director's Exhibit 4. Accordingly, this case arises within the jurisdiction of the United States Court of Appeals for the Third Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200 (1989) (en banc).

x-ray evidence established the existence of clinical pneumoconiosis, employer did not disprove the existence of pneumoconiosis. Further, the administrative law judge found that employer failed to establish that claimant's total disability did not arise, in whole or in part, out of dust exposure in claimant's coal mine employment, because employer did not rule out coal dust as a cause of claimant's totally disabling impairment. Accordingly, the administrative law judge awarded benefits.

On appeal, employer argues that the administrative law judge erred by failing to consider a negative x-ray interpretation when he determined that the x-ray evidence established the existence of clinical pneumoconiosis. Employer further contends that the administrative law judge erred in finding that employer failed to rule out coal mine employment as a cause of claimant's total disability, and therefore erred in finding that employer failed to rebut the Section 411(c)(4) presumption.[4]   Claimant has filed a response, urging affirmance of the award of benefits. The Director, Office of Workers' Compensation Programs (the Director), has filed a response, arguing that the administrative law judge erred in finding that employer failed to rebut the presumption because it could not prove that coal dust exposure played no part in claimant's totally disabling impairment.

The Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law. 33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359 (1965).

Upon claimant's invocation of the Section 411(c)(4) presumption, the burden shifted to employer to rebut the presumption by disproving the existence of pneumoconiosis, or by proving that claimant's pulmonary or respiratory impairment "did not arise out of, or in connection with," his coal mine employment. 30 U.S.C. §921(c)(4). Under the implementing regulation, employer may rebut the presumption by establishing that claimant has neither clinical nor legal pneumoconiosis,[5] 20 C.F.R.

---

[4] We affirm, as unchallenged on appeal, the administrative law judge's findings that claimant had at least fifteen years of qualifying coal mine employment, that he has a totally disabling respiratory impairment pursuant to 20 C.F.R. §718.204(b), that he invoked the Section 411(c)(4) presumption, and that he established a change in an applicable condition of entitlement pursuant to 20 C.F.R. §725.309(c). *See Skrack v. Island Creek Coal Co.*, 6 BLR 1-710, 1-711 (1983); Decision and Order at 9-18.

[5] "Clinical pneumoconiosis" consists of "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic

3

§718.305(d)(1)(i), or by establishing that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in §718.201." 20 C.F.R. §718.305(d)(1)(ii).

With respect to the administrative law judge's finding that it failed to disprove the existence of pneumoconiosis, employer argues that the administrative law judge erred in not considering Dr. Wolfe's July 6, 2011, negative interpretation of an x-ray taken on July 19, 2010. Employer's Brief at 5; Employer's Exhibit 1. The administrative law judge admitted that x-ray interpretation into the record, but did not consider it when he weighed the x-ray evidence because employer "failed to submit the prerequisite Black Lung Evidence Summary Form which designates the use of such a reading in the adjudicatory scheme. . . ."[6] Decision and Order at 8; Hearing Transcript at 10-12. Employer contends that this was error, because the administrative law judge admitted the interpretation at the hearing. Employer's Brief at 5. This argument lacks merit, because the administrative law judge considered another negative interpretation by Dr. Wolfe, dated August 2, 2010, of the same x-ray. Decision and Order at 8-9; Employer's Exhibit 1; Director's Exhibit 12. Employer has not shown that the administrative law judge abused his discretion by considering only the August 2, 2010, interpretation. *See Clark v. Karst-Robbins Coal Co.*, 12 BLR 1-149, 1-153 (1989) (en banc). Furthermore, because employer cannot show it was prejudiced by the administrative law judge's failure to consider the July 6, 2011, x-ray interpretation, any error was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 413 (2009); *Larioni v. Director, OWCP*, 6 BLR 1-1276, 1-1278 (1985).

Employer raises no other arguments regarding the administrative law judge's determination that the x-ray evidence established the existence of clinical pneumoconiosis. Therefore, we affirm the administrative law judge's finding that claimant established the existence of clinical pneumoconiosis pursuant to 20 C.F.R. §718.202(a)(1). Decision and Order at 9. Because we have affirmed the administrative law judge's finding of clinical pneumoconiosis, we also affirm his finding that employer failed to rebut the Section 411(c)(4) presumption by disproving the existence of

---

reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. §718.201(a)(1). "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. 20 C.F.R. §718.201(a)(2).

[6] The administrative law judge noted at the hearing that he did not have employer's evidence summary form. Hearing Transcript at 7. Employer's counsel said he would submit it subsequently, *id.*, but there is no indication in the record that he did.

4

pneumoconiosis. *See* 30 U.S.C. §921(c)(4); 20 C.F.R. §718.305(d)(1)(i); *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 480, 25 BLR 2-1, 2-9 (6th Cir. 2011); *Barber v. Director, OWCP*, 43 F.3d 899, 901, 19 BLR 2-61, 2-67 (4th Cir. 1995); Decision and Order at 18.

As for the second method of rebuttal, employer and the Director both argue that the administrative law judge erred in finding that employer failed to rebut the Section 411(c)(4) presumption by establishing that claimant's respiratory impairment "did not arise out of, or in connection with," his coal mine employment. 30 U.S.C. §921(c)(4). To attempt to rebut the presumption using this method, employer relied on the opinions of Drs. Kaplan and Fino. Dr. Kaplan opined that claimant is not totally disabled, but that coal mine dust exposure contributed approximately ten percent to claimant's chronic obstructive pulmonary disease, emphysema, and chronic bronchitis. Employer's Exhibit 3 at 16-20. Dr. Fino concluded that claimant is totally disabled, and opined that "smoking is the clinically significant factor in his impairment and that coal mine dust . . . may be contributing a numerical reduction in FEV1, [but] it's not clinically significant." Employer's Exhibit 2 at 22. Although he believed that claimant would be as disabled if he had never performed coal mine employment, Dr. Fino agreed that coal mine dust exposure made "some contribution" to claimant's disabling pulmonary impairment. *Id.* at 22, 26.

The administrative law judge concluded that the opinions of Drs. Kaplan and Fino were insufficient to rebut the presumption:

> Unfortunately for Employer, however, 20 C.F.R. §718.305(d) provides that for the [Section 411(c)(4) presumption] to be rebutted, the cause of total pulmonary/respiratory disability cannot be due . . . in whole *or in part* to coal dust exposure from the miner's coal mine employment. As neither physician can state that coal dust exposure is not responsible for at least a part of Claimant's pulmonary/respiratory impairment, the presumption . . . is not rebutted.

Decision and Order at 19 (citation omitted) (emphasis in original).

Employer contends that the administrative law judge "misinterpreted" 20 C.F.R. §718.305(d) by requiring employer to prove that claimant's disabling respiratory impairment is not due, even in part, to coal mine dust exposure. Employer's Brief at 4-5. Employer argues that the administrative law judge's interpretation of the regulation "would basically preclude any type of defense" because "[n]o physician is going to indicate that coal mine dust employment [sic] bore no relationship to a respiratory impairment, even in cases of a significant smoking history." *Id.* at 5. Therefore, employer contends that the administrative law judge should have found that the opinions

5

of Drs. Kaplan and Fino established that claimant's total disability did not arise in whole or in part from coal mine dust exposure. *Id.* This argument lacks merit.

In laying out employer's burden to rebut the Section 411(c)(4) presumption by establishing that the cause of claimant's total disability "did not arise in whole or in part out of dust exposure in [claimant's] coal mine employment," the administrative law judge cited the previous version of the relevant regulation. *See* 20 C.F.R. §718.305(d) (2013); Decision and Order at 18. The Department of Labor (DOL) subsequently issued revised regulations that took effect on October 25, 2013, *see* 78 Fed. Reg. 59,102 (Sept. 25, 2013), and set forth employer's burden on rebuttal to establish that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. §718.305(d)(1)(ii). As shown below, however, the rebuttal standard under the revised regulation is effectively the same as it was before.

When it proposed 20 C.F.R. §718.305(d)(1)(ii), the DOL announced that the revised regulation would require an employer to prove that "there is no connection between the miner's totally disabling respiratory or pulmonary impairment and his or her dust exposure in coal mine employment." 77 Fed. Reg. 19,456, 19,463 (Mar. 30, 2012). The DOL made clear that this standard was consistent with the "rule-out" standard developed through case law interpreting both the rebuttal standard under the previous version of 20 C.F.R. §718.305(d), and the standard under 20 C.F.R. §727.203(b)(3) for rebutting the interim presumption at 20 C.F.R. §727.203(a). *Id.; see Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1320, 19 BLR 2-192, 2-203 (7th Cir. 1995); *Kline v. Director, OWCP*, 877 F.2d 1175, 1179, 12 BLR 2-346, 2-354 (3d Cir. 1989); *Carozza v. U.S. Steel Corp.*, 727 F.2d 74, 78, 6 BLR 2-15, 2-21-22 (3d Cir. 1984); *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939, 2 BLR 2-38, 2-43-44 (4th Cir. 1980); *Defore v. Ala. By-Prods. Corp.*, 12 BLR 1-27 (1988). The DOL noted that, under the "rule-out" standard, an employer "must rule out the miner's coal mine employment as a contributing cause of the totally disabling respiratory or pulmonary impairment." 77 Fed. Reg. at 19,463. The DOL concluded that "[t]here is no reason to depart from this consistent and longstanding precedent when interpreting the standard for rebuttal under amended Section 411(c)(4)." *Id.* The DOL maintained that position when it announced the final rule adopting 20 C.F.R. §718.305(d)(1)(ii), explaining that the "no part" standard of the revised regulation was not a departure, but was "intended to simplify and clarify the 'in whole or in part[']' standard" under the prior version of 20 C.F.R. §718.305(d). 78 Fed. Reg. 59,102, 59,107 (Sept. 25, 2013).

This history demonstrates that the "no part" standard of 20 C.F.R. §718.305(d)(1)(ii) is, in substance, no different than the "rule-out" or the "in whole or in part" standard of 20 C.F.R. §718.305(d) (2013) applied by the administrative law judge. *See Antelope Coal Co. v. Goodin*, 743 F.3d 1331, 1336-37 (10th Cir. 2014) (holding that, to rebut via §718.305(d)(1)(ii), employer must rule out any relationship between

6

A 0008

disability and coal mine employment); *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1071 (6th Cir. 2013) (holding that employer's burden on rebuttal is to rule out coal mine employment as a cause of disability, or show that pneumoconiosis played no part in causing disability). Employer is correct that rebuttal via 20 C.F.R. §718.305(d)(1)(ii) is difficult, but as the DOL explained, that is the choice Congress made in reviving the Section 411(c)(4) presumption. *See* 78 Fed. Reg. at 59,106-07 (observing that Congress singled out miners who can invoke the presumption for special treatment, and that "[a]dopting a rigorous rebuttal standard" when employer cannot disprove the existence of pneumoconiosis is consistent with Congress's approach); *see also Consolidation Coal Co. v. Director, OWCP [Bailey]*, 721 F.3d 789, 795, 25 BLR 2-285, 2-295 (7th Cir. 2013) (noting that "the 15-year presumption is difficult to rebut"). We therefore reject employer's contention that the administrative law judge misinterpreted the regulation when he required employer to prove that claimant's disabling impairment was not due, even in part, to his coal mine dust exposure.

Unlike employer, the Director recognizes that to rebut the Section 411(c)(4) presumption via 20 C.F.R. §718.305(d)(1)(ii), employer must "rule out" pneumoconiosis as a cause of claimant's total disability by demonstrating that "no part" of claimant's disabling impairment is caused by pneumoconiosis. Director's Brief at 3. The Director, however, argues that the administrative law judge erred by failing to determine "whether Dr. Fino and Dr. Kaplan totally excluded pneumoconiosis as a cause of [claimant's] impairment." *Id.* at 3-4. Because Drs. Kaplan and Fino both concluded that claimant had neither clinical nor legal pneumoconiosis, the Director contends that their opinions "are at least facially sufficient to establish rebuttal under revised section 718.305(d)(1)(ii)." *Id.* at 4; Employer's Exhibits 2, 3. The Director recognizes that Drs. Kaplan and Fino "do not wholly rule out dust exposure as a cause of [claimant's] lung disease," but argues that their opinions can still be used as evidence to rebut the presumption of legal pneumoconiosis, which requires employer to show only that claimant's lung disease is not "significantly related to, or substantially aggravated by, dust exposure in the miner's coal mine employment." Director's Brief at 4 (quoting 20 C.F.R. §718.201(a)(2), (b)). Therefore, the Director urges the Board to remand the case to the administrative law judge for further consideration.[7]

---

[7] The Director also argues that, on remand, the administrative law judge should discount the opinions of Drs. Kaplan and Fino as poorly reasoned, because: 1) neither doctor diagnosed clinical pneumoconiosis, contrary to the administrative law judge's finding; 2) Dr. Kaplan opined that claimant is not totally disabled, contrary to the administrative law judge's finding; 3) Dr. Kaplan failed to explain why the ten percent contribution of coal dust exposure to claimant's impairment was not significant; 4) Dr. Fino erroneously relied on x-ray evidence showing no significant coal dust accumulation in claimant's lungs to eliminate legal pneumoconiosis as a cause of claimant's

7

We disagree with the Director's position, as we understand it.[8] Employer's failure to disprove the existence of clinical pneumoconiosis precludes a rebuttal finding that claimant does not suffer from pneumoconiosis. *See* 20 C.F.R. §718.305(d)(1)(i). As noted above, employer must establish that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. §718.305(d)(1)(ii). The administrative law judge essentially focused on the words "no part" in the regulation, and determined that the opinions of Drs. Kaplan and Fino did not meet the "no part" or "rule-out" standard, because neither physician could say that coal mine dust exposure was not responsible for at least some portion of claimant's totally disabling impairment. Decision and Order at 19. In his brief on appeal, however, the Director seems to focus on the word "pneumoconiosis." Because Drs. Kaplan and Fino do not believe that the miner has clinical or legal pneumoconiosis, the Director contends that their opinions, if credited, would establish that no part of the claimant's impairment was caused by pneumoconiosis.

The problem with the Director's argument on appeal, in our view, is that it makes 20 C.F.R. §718.305(d)(1)(i) superfluous. *See B & G Constr. Co. v. Director, OWCP [Campbell]*, 662 F.3d 233, 248-49, 25 BLR 2-13, 2-37 (3d Cir. 2011) (holding that "when interpreting a statute, we strive to give effect to every word which Congress used and to avoid any interpretation which renders an element of the statute superfluous"). Section 718.305(d)(1)(i) allows an employer to rebut the Section 411(c)(4) presumption by disproving the existence of pneumoconiosis, but there would be no need for it if 20 C.F.R. §718.305(d)(1)(ii) required the administrative law judge to reconsider whether the evidence disproved the existence of pneumoconiosis.

---

impairment, when the regulations permit a finding of pneumoconiosis notwithstanding negative x-rays; and 5) Dr. Fino rejected pneumoconiosis as a cause of claimant's impairment in part because claimant's pulmonary function studies showed some reversibility after bronchodilation, but, Dr. Fino failed to account for the studies' fixed impairment component. Director's Brief at 4. Therefore, the Director contends that, on remand, the administrative law judge should again find that employer has failed to rebut the Section 411(c)(4) presumption. *Id.*

[8] Although the Director is correct that the standard for disproving the existence of legal pneumoconiosis is different than the standard for "wholly" ruling out coal dust exposure as a cause of claimant's impairment under 20 C.F.R. §718.305(d)(1)(ii), Director's Brief at 4, we do not understand why the Director believes that difference is relevant here, where the issue is whether employer can rebut the Section 411(c)(4) presumption via 20 C.F.R. §718.305(d)(1)(ii), by proving that no part of claimant's totally disabling respiratory or pulmonary impairment was caused by pneumoconiosis.

8

The Director's argument is also at odds with the DOL's explanation of the recent regulatory revisions. The DOL stated in the preamble to the revisions that if a claimant establishes total disability and invokes the Section 411(c)(4) presumption, the remaining three elements of entitlement — "disease" (i.e., pneumoconiosis), "disease causation," and "disability causation: that the miner's pneumoconiosis contributes to that disability" — are presumed. 78 Fed. Reg. at 59,106. The DOL explained that an employer may rebut the "disease" and "disease causation" elements via 20 C.F.R. §718.305(d)(1)(i), by proving that the miner has neither clinical nor legal pneumoconiosis, and that an employer may rebut the "disability causation" element via 20 C.F.R. §718.305(d)(1)(ii), by proving that no part of the miner's disability was caused by pneumoconiosis.[9] *Id.* The DOL's explanation of how 20 C.F.R. §718.305(d) is applied suggests that the existence of pneumoconiosis is not an issue the administrative law judge must address at 20 C.F.R. §718.305(d)(1)(ii).

Therefore, we reject the Director's argument that the administrative law judge must reconsider the opinions of Drs. Kaplan and Fino because they concluded that claimant does not have pneumoconiosis and thus, if credited, would establish that no part of claimant's totally disabling respiratory impairment was caused by pneumoconiosis, pursuant to 20 C.F.R. §718.305(d)(1)(ii). Having found that employer failed to disprove the existence of pneumoconiosis pursuant to 20 C.F.R. §718.305(d)(1)(i), the administrative law judge applied the proper standard for rebuttal under 20 C.F.R. §718.305(d)(1)(ii), and reasonably determined that neither Dr. Kaplan nor Dr. Fino ruled out coal mine dust as a cause of claimant's disabling impairment.[10] Decision and Order at 18-19. Therefore, we affirm the administrative law judge's determination that employer failed to rebut the Section 411(c)(4) presumption via 20 C.F.R. §718.305(d)(1)(ii). *See Goodin*, 743 F.3d at 1346; *Ogle*, 737 F.3d at 1071; Decision and Order at 19.

---

[9] The Director cites the preamble's discussion of the elements of entitlement that are presumed upon invocation of the Section 411(c)(4), but does not cite the subsequent discussion of those elements which may be rebutted via 20 C.F.R. §718.305(d)(1)(i) and (ii). Director's Brief at 3; *see* 78 Fed. Reg. 59,102, 59,106 (Sept. 25, 2013).

[10] After reviewing the deposition testimony of Drs. Kaplan and Fino, the administrative law judge concluded that "[b]oth physicians, therefore, concede that they cannot rule out coal dust as a cause of at least part of Claimant's pulmonary/respiratory impairment — which Dr. Fino stated was disabling and Dr. Kaplan stated was not.". Decision and Order at 19. Employer does not dispute the administrative law judge's characterization of the physicians' opinions.

9

Because claimant invoked the Section 411(c)(4) presumption that his total disability is due to pneumoconiosis, and employer did not rebut the presumption, we affirm the administrative law judge's award of benefits.

Accordingly, the administrative law judge's Decision and Order Awarding Benefits is affirmed.

SO ORDERED.


BETTY JEAN HALL, Acting Chief
Administrative Appeals Judge


ROY P. SMITH
Administrative Appeals Judge


REGINA C. McGRANERY
Administrative Appeals Judge


A 0012

# ◯ CERTIFICATE OF SERVICE ◯

2013-0545-BLA Kenneth A. Davis v. PBS Coals Inc., Rockwood Casualty Insurance Company, Director, Office of Workers' Compensation Programs (Case No. 11-BLA-6116)

I certify that the parties below were served this day.

AUG 2 6 2014
(DATE)

_Thomas O. Shepherd_

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Heath M. Long, Esq.
Pawlowski, Bilonick and Long
603 North Julian Street
P.O. Box 658
Ebensburg, PA 15931
  --Certified

Kenneth A. Davis
301 Walker Street
Box 208
Garrett, PA 15542
  --Certified

Ann Marie Scarpino, Esq.
U.S. Department of Labor
Office of the Solicitor
Suite N-2119
200 Constitution Avenue, NW
  --Certified

Hon. Drew A. Swank
Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue Suite 1800
Pittsburg, PA 15222

Michael Chance
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

Sean B. Epstein, Esq.
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
One Oxford Centre
38th Floor
Pittsburgh, PA 15219
  --Certified

Seena Foster, Esq.
Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Suite 400
Washington, DC 20210

A 0013

## NOTICE OF APPEAL RIGHTS

A Decision of the Benefits Review Board shall become final sixty (60) days after its issuance unless a written petition for review is filed with the appropriate United States Court of Appeals prior to the expiration of the sixty (60) day period, or unless a timely request for reconsideration is filed with the Board. 33 U.S.C. Section 921; 30 U.S.C. Section 932(a); 20 C.F.R. Sections 802.406, 802.407. Therefore, you are advised that you may SEEK RECONSIDERATION OF, OR APPEAL, a final decision of the Board within the time limits set forth below. THE TIME LIMITS CANNOT BE EXTENDED, AND YOU MUST SUBMIT YOUR REQUEST TO THE PROPER PLACE WITHIN THE TIME PROVIDED.

If you seek RECONSIDERATION by this Board (that is, if you want the Board to reconsider its decision), you must submit to the Board a written Motion for Reconsideration within 30 DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. Your motion should identify any error you find in the Board's opinion and state the reasons you believe warrant further consideration of your case. If you file a timely motion for reconsideration, you will have sixty (60) days from issuance of the Board's decision on reconsideration to file an appeal with a Court of Appeals, as set forth below.

Alternatively, if you wish to APPEAL to a United States Court of Appeals, you must insure that a petition for review is received by THE APPROPRIATE COURT (NOT THIS BOARD WITHIN SIXTY (60) DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. The petition for review should contain the case number and the date of the Board's decision. The petition should be sent to the Court of Appeals which covers the state in which the employee's injury occurred. In a black lung claim, any state in which the miner had coal mine employment may be considered the state in which the injury occurred (i.e., for a black lung appeal, you may file in any Court of Appeals covering any state in which you worked as a miner). Listed on the back of this page are the twelve Courts of Appeals and the states they cover. You should identify the court covering the state of injury (including all states of mine employment for black lung claims) and file your petition with that court. If you have question about your case, call the Clerk of the court at the number shown on the bottom of this page. If you appeal directly to the Court of Appeals you may not later get reconsideration by the Board. However, if you seek Board reconsideration you may later appeal the Board's ruling on reconsideration to the Court of Appeals.

IF YOU HAVE ANY QUESTIONS ABOUT THE PROCEDURES TO BE FOLLOWED IN YOUR CASE, CALL THE OFFICE OF THE CLERK OF THE BOARD, (202) 693-6300.

A 0014

## COURT OF APPEALS

**First Circuit** (Maine, New Hampshire, Rhode Island Massachusetts, Puerto Rico)
Margaret Carter, Clerk
U.S. Court of Appeals
  for the First Circuit
1 Court House Way
Suite 2500
Boston, MA  02210
(617) 748-9057
www.ca1.uscourts.gov

**Second Circuit** (New York, Connecticut, Vermont)
Catherine Ohagan Wolfe, Clerk
U.S. Court of Appeals
  for the Second Circuit
40 Foley Square
Room 1702, U.S. Courthouse
New York, NY  10007
(212) 857-8544
www.ca2.uscourts.gov

**Third Circuit** (Pennsylvania, New Jersey, Delaware, Virgin Islands)
Marcia M. Waldron, Clerk
U.S. Court of Appeals
  for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106
(215) 597-2995
www.ca3.uscourts.gov

**Fourth Circuit** (Maryland, Virginia, West Virginia North Carolina, South Carolina)
Patricia S. Connor, Clerk
U.S. Court of Appeals
  for the Fourth Circuit
1100 East Main Street
Room 501
Richmond, VA 23219-3517
(804) 916-2700
www.ca4.uscourts.gov

**Fifth Circuit** (Louisiana, Texas, Mississippi)
Lyle W. Cayce, Clerk
U.S. Court of Appeals
  for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408
(504) 310-7700
www.ca5.uscourts.gov

**Sixth Circuit** (Ohio, Kentucky, Tennessee, Michigan)
Leonard Green, Clerk
U.S. Court of Appeals
  for the Sixth Circuit
100 East 5th Street,  Room 424
Cincinnati, OH  45202
(513) 564-7000
www.ca6.uscourts.gov

**Seventh Circuit** (Wisconsin, Illinois, Indiana)
Gino Agnello, Clerk
U. S. Court of Appeals
  for the Seventh Circuit
219 South Dearborn Street
Room 2722
Chicago, IL  60604
(312) 435-5850
www.ca7.uscourts.gov

**Eighth Circuit** (Minnesota, Iowa, Missouri, Arkansas, Nebraska, South Dakota, North Dakota)
Michael Gans, Clerk
U.S. Court of Appeals
  for the Eighth Circuit
Thomas F. Eagleton Court House
111 South 10th Street  Room 2432.9
St. Louis, MO 63102
(314) 244-2400
www.ca8.uscourts.gov

**Ninth Circuit** (Washington, Oregon, Montana, Idaho, California, Nevada, Arizona, Alaska, Hawaii)
Molly C. Dwyer, Clerk
U.S. Court of Appeals
  for the Ninth Circuit
95 Seventh Street
San Francisco, CA  94103
(415) 355-8000
www.ca9.uscourts.gov

**Tenth Circuit** (Wyoming, Utah, Colorado, Kansas, Oklahoma, New Mexico)
Elisabeth A. Shumaker, Clerk
U.S. Court of Appeals
  for the Tenth Circuit
1823 Stout Street
Denver, CO 80257
(303) 844-3157
www.ca10.uscourts.gov

**Eleventh Circuit** (Alabama, Georgia, Florida)
John Ley, Clerk
U. S. Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street,  N.W.
Atlanta, GA  30303
(404) 335-6100
www.ca11.uscourts.gov

**District of Columbia Circuit** (Washington, D.C.)
Mark J. Langer, Clerk
U.S. Court of Appeals
  for the D.C. Circuit
3rd and Constitution Avenue,  N.W.
Washington, D.C.  20001
(202) 216-7000
www.cadc.uscourts.gov

June 2011

AUG 8 2013

RW 97433

**U.S. Department of Labor**

Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue, Suite 1800
Pittsburgh, PA 15222

(412) 644-5754
(412) 644-5005 (FAX)

**Issue Date: 05 August 2013**

CASE NO.: 2011-BLA-6166

In the Matter of:

KENNETH A. DAVIS,
             Claimant

    v.

PBS COALS INC.,
             Employer

    And

ROCKWOOD CASUALTY INSURANCE COMPANY,
             Carrier

    And

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
             Party-in-Interest

Appearances:

Heath M. Long, Esq.,
             For the Claimant

Sean Epstein, Esq.,
             For the Employer

Catherine Oliver Murphy, Esq.,
             For the Director

Before:    Drew A. Swank
             Administrative Law Judge

## DECISION AND ORDER AWARDING BENEFITS

This proceeding arises from a miner's claim for benefits, under the Federal Coal Mine Health and Safety Act of 1969, as amended, at 30 U.S.C. § 901 *et seq.* (the "Black Lung Benefits Act" or "Act") and the implementing regulations at 20 C.F.R. Parts 718 and 725 (Regulations). Unless otherwise noted, citations are to the amended regulations at 20 C.F.R. Parts 718 and 725, which became effective on January 19, 2001. The Act and implementing regulations provide compensation and other benefits to:

> 1. Living coal miners who are totally disabled due to pneumoconiosis and their dependents;
>
> 2. Surviving dependents of coal miners whose death was due to pneumoconiosis; and,
>
> 3. Surviving dependents of coal miners who were totally disabled due to pneumoconiosis at the time of their death.

The Act and Regulations define pneumoconiosis ("black lung disease" or "coal worker's pneumoconiosis" ("CWP")) as a chronic dust disease of the lungs and its sequelae, including respiratory and pulmonary impairments arising out of coal mine employment.

## PROCEDURAL HISTORY

This claim for benefits was filed on April 19, 2010. DX-3. Director issued its initial findings, proposing to grant benefits, on January 10, 2011. DX-18. Director then issued its Proposed Decision and Order, awarding benefits, on June 14, 2011. DX-23. Employer requested a formal hearing on June 17, 2011, and the matter was referred to the Office of Administrative Law Judges for a hearing on July 26, 2011. DX-24, 27. Claimant had filed a previous claim for benefits which was denied by Director on November 12, 2004. DX-1. That decision found that Claimant did not have pneumoconiosis caused by coal dust exposure nor a total respiratory disability. DX-1. There is no indication of that previous decision ever having been appealed.

The present case was originally scheduled for hearing on October 30, 2012. ALJ-1. It was rescheduled and assigned to the undersigned. ALJ-2. A hearing was conducted on November 14, 2012, in Ebensburg, Pennsylvania, at which Claimant and Employer were represented by counsel. The Regional Solicitor, via a letter dated October 16, 2012, entered a written appearance for Director, but did not attend the hearing. The parties were afforded the full opportunity to present evidence and argument. The decision in this claim is based on testimony at the hearing of the claimant, Mr. Davis; evidence admitted into the record; and arguments of the parties. The evidence admitted for consideration in this matter is comprised of Director's Exhibits 1-29, Administrative Law Judge's Exhibits 1-3, Claimant's Exhibits 1-6, and Employer's Exhibits 1-3.

At the hearing, the undersigned set January 14, 2013, as the due date for closing briefs. TR-22. By a letter dated May 15, 2013, counsel for Employer had requested an extension of time so as to submit a post-hearing deposition of Dr. Fino. The undersigned set for July 26, 2013, as the due date for both the deposition transcript of Dr. Fino and the parties' closing briefs. Neither the deposition transcript of Dr. Fino nor closing briefs from either party were received by the date of this decision. Furthermore, prior to the hearing, counsel for Employer had failed to submit a Black Lung Evidence Summary Form as required by the Notice of Hearing. ALJ-1; TR-7. Despite stating at the hearing that he would submit the form, he did not. TR-7.

## ISSUES

Because this claim was filed after April 1, 1980, it is governed by the regulations at 20 C.F.R. Part 718. Under these regulations, Claimant bears the burden of demonstrating each of the following elements by a preponderance of the evidence, except insofar as a presumption may apply:

(1) the miner suffers from pneumoconiosis;

(2) the miner's pneumoconiosis arose from coal mine employment;

(3) the miner has a totally disabling respiratory impairment; and

(4) the miner's totally disabling respiratory impairment is caused by pneumoconiosis.

20 C.F.R. §§ 718.202-718.204; *Baumgartner v. Director, OWCP*, 9 B.L.R. 1-65 (1986) (*en banc*); *Gee v. W.G. Moore & Sons*, 9 B.L.R. 1-4 (1986) (*en banc*). *See Dir., OWCP v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir. 1987). Failure to establish any one of these elements precludes entitlement to benefits. 20 C.F.R. §§ 718.202-718.205; *Anderson v. Valley Camp of Utah, Inc.*, 12 B.L.R. 1-111, 1-112 (1989); *Trent v. Dir., OWCP*, 11 B.L.R. 1-26 (1987); *Perry v. Dir., OWCP*, 9 B.L.R. 1-1 (1986); *see Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997). Moreover, "[T]he presence of evidence favorable to the claimant or even a tie in the proof will not suffice to meet that burden." *Eastover Mining Co. v. Dir., OWCP [Williams]*, 338 F.3d 501, No. 01-4064 (6th Cir. 2003) (citing *Greenwich Collieries [Ondecko]*, 512 U.S. at 281); *see also Peabody Coal Co. v. Odom*, 342 F.3d 486 (6th Cir. 2003).

In the present case, the issues that Employer contests are whether Claimant suffers from pneumoconiosis, the causation of any pneumoconiosis, whether Claimant has a totally disabling respiratory impairment, whether any totally disabling respiratory impairment is caused by pneumoconiosis, and whether there has been a sufficient change in conditions since Claimant's previously denied application for benefits. TR-6.

Because this claim for benefits is filed more than one year from the date of denial of a prior claim for benefits, it is governed by the requirements at 20 C.F.R. § 725.309. As a matter of law, all evidence formally admitted in the prior claim is admitted in the subsequent claim. 20 C.F.R. § 725.309(d)(1). Further, any stipulations from, or failure to contest an issue in, the prior claim shall be binding in the subsequent claim. 20 C.F.R. § 725.309(d)(4). Finally, pursuant to

- 3 -

*Stacy v. Cheyenne Coal Co.*, 21 B.L.R. 1-111 (1999), Claimant must meet the filing requirements at 20 C.F.R. §§ 725.304 and 725.305. As an initial matter, evidence admitted in the subsequent claim must demonstrate an element of entitlement adjudicated against the miner in the prior claim. 20 C.F.R. § 725.309(d). Only medical data generated *after* denial of the prior claim may be considered in meeting this threshold standard. 20 C.F.R. § 725.309(d)(3). *See also Cline v. Westmoreland Coal Co.*, 21 B.L.R. 1-69 (1997) (it was proper for the Administrative Law Judge to refuse to consider evidence "in existence at the time the (prior) claim was denied on grounds that such evidence 'is not applicable in determining whether there has been a change in condition since the denial'"). In the prior claim, Claimant failed to establish the presence of coal workers' pneumoconiosis. DX-1. If Claimant satisfies this threshold standard with newly generated evidence, then the entire record is reviewed *de novo* to determine entitlement to benefits. 20 C.F.R. § 725.309(d)(4). The regulations also provide that, if the claim is awarded, "no benefits may be paid for any period prior to the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(d)(5).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Preliminary Matters

A. Coal Miner

The parties stipulated that Claimant worked in the above-ground coal mining industry for twenty four (24) years. TR-6.

B. Date of Filing

Claimant filed his claim for benefits, under the Act, on April 19, 2010. DX-3. None of the Act's filing time limitations[1] are applicable; thus, the claim was timely filed.

---

[1]Twenty C.F.R. § 725.308 (Black Lung Benefits Act as amended, 30 U.S.C.A. §§ 901-945, § 422(f)) provides in pertinent part:

(a) A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner . . . .

(c) There shall be a rebuttable presumption that every claim for benefits is timely filed . . . . [T]he time limits in this section are mandatory and may not be waived or tolled except upon a showing of extraordinary circumstances.

A 0019

C. Responsible Operator[2]

     Employer does not contest that it is not the responsible operator. TR-6.

D. Dependents

     I find that Claimant has one dependent for purposes of augmentation of benefits under the Act, his wife Helen. DX-10.

E. Personal and Employment History

     Claimant was born on June 18, 1937. DX-3. Claimant last worked in the mining industry in 1995. DX-3, 6, 10. All of Claimant's mining work was in above-ground, surface mines. DX-4, TR-14. Claimant's last mining position was as a load operator. DX-3, 4, 18. Since working in the mining industry, Claimant has reported self-employment earnings until 2008. DX-10. Claimant smoked cigarettes for many years. DX-12, 13.

F. Appellate Jurisdiction

     As the evidence indicates that Claimant last engaged in coal mine employment in the Commonwealth of Pennsylvania, appellate jurisdiction of this matter lies with the Third Circuit Court of Appeals. DX-6, 10; *see Shupe v. Director, OWCP*, 12 B.L.R. 1-200, 1-202 (1989) (*en banc*).

## II. Existence of Pneumoconiosis

     Under the amended regulations, "pneumoconiosis" is defined to include both clinical and legal pneumoconiosis:

---

[2]Liability for payment of benefits to eligible miners and their survivors rests with the responsible operator, or if the responsible operator is unknown or is unable to pay benefits, with the Black Lung Disability Trust Fund. 20 C.F.R. § 725.493(a)(1) defines responsible operator as the claimant's last coal mine employer with whom he had the most recent cumulative employment of not less than one year. *Snedecker v. Island Creek Coal Co.*, 5 B.L.R. 1-91 (1982) (§ 725.495(a) for claims filed on or after Jan. 19, 2001). One year of coal mine employment may be established by accumulating intermittent periods of coal mine employment. 20 C.F.R. § 725.493(b); *see* § 725.101(32) (for adjudications on or after Jan. 19, 2001).

The regulations further provide the following two presumptions to support a finding that the employer is liable for benefits: (1) a presumption that the miner was regularly and continuously exposed to coal dust; and (2) a presumption that the miner's pneumoconiosis arose out of his employment with the operator. 20 C.F.R. § 725.491(d). To rebut the presumption of regular and continuous exposure to coal dust, an employer must establish that there were *no* significant periods of coal dust exposure. *Conley v. Roberts and Schaefer Coal Co.*, 7 B.L.R. 1-309 (1984); *Richard v. C & K Coal Co.*, 7 B.L.R. 1-372 (1984); *Zamski v. Consolidation Coal Co.*, 2 B.L.R. 1-1005 (1980). The frequency of coal dust exposure must be shown to be so slight that employment with the mine operator could not have caused pneumoconiosis, *Richard, supra; Harringer v. B & G Construction Co.*, 4 B.L.R. 1-542 (1982).

A 0020

(a) For the purpose of the Act, "pneumoconiosis" means "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.' This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

(1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. The definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, "pneumoconiosis" is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.[3]

---

[3]Pneumoconiosis is a progressive and irreversible disease; once present, it does not go away. *Mullins Coal Co. v. Dir., OWCP*, 484 U.S. 135, 151 (1987); *Lisa Lee Mines v. Dir.*, 86 F.3d 1358, 1362 (4th Cir. 1996) (*en banc*); *LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 314-315 (3d Cir. 1995). In *Henley v. Cowan & Co.*, 21 B.L.R. 1-148 (May 11, 1999), the Board held that aggravation of a pulmonary condition by dust exposure in coal mine employment must be "significant and permanent" in order to qualify as CWP, under the Act. In *Workman v. Eastern Associated Coal Corp.*, 23 B.L.R. 1-22, BRB No. 02-0727 BLA (Aug. 19, 2004) (order on recon) (*en banc*), the Board ruled that because the potential for progressivity and latency is inherent in every case, a miner who proves the presence of pneumoconiosis that was not manifest at the cessation of his coal mine employment, or who proves that his pneumoconiosis is currently disabling when it was previously not, has demonstrated that the disease from which he suffers is of a progressive nature. In amending § 718.201, DOL concluded chronic dust diseases of the lung and its sequelae arising out of coal mine employment "may be latent and progressive, albeit in a minority of cases." *See* 64 Fed. Reg. 54978-79 (Oct. 8, 1999); 65 Fed. Reg. 79937-44, 79968-72 (Dec. 20, 2000); 68 Fed. Reg. 69930-31 (Dec. 15, 2003). "Although every case of pneumoconiosis does not possess these characteristics, the regulation was designed to prevent operators from asserting that pneumoconiosis is never latent and progressive." 20 C.F.R. § 718.201(c); *see Nat'l Mining Ass'n v. Chao, Sec. of Labor*, 160 F. Supp. 2d 47 (D.D.C. Aug. 9, 2001), *aff'd*, 292 F.3d 849 (D.C. Cir. 2002) ("*NMA*"), 292 F.3d at 863. *Midland Coal Co. v. Dir., OWCP[Shores]*, 358 F.3d 486 (7th Cir. 2004). Seventh Circuit upheld DOL's 2001 definition of CWP as a latent and progressive disease. DOL's regulation, on this scientific finding is entitled to deference. It is designed to prevent operators from claiming CWP is never latent and progressive.

A 0021

20 C.F.R. § 718.201.

Claimant has the burden of proving the existence of pneumoconiosis, absent application of 30 U.S.C. § 921(c)(4). The existence of pneumoconiosis may be established by any one or more of the following methods:

(1) chest X-rays;

(2) autopsy or biopsy;

(3) by operation of presumption described in 20 C.F.R. §§ 718.304-306 ; or

(4) by a physician exercising sound medical judgment based on objective medical evidence.

20 C.F.R. § 718.202(a).

In *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 2000 WL 524798 (4th Cir. 2000), the Fourth Circuit held that the administrative law judge must weigh all evidence together under 20 C.F.R. § 718.202(a) to determine whether the miner suffered from coal workers' pneumoconiosis. In support of its decision, the court cited to the Third Circuit's decision in *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 24-25 (3d Cir. 1997), which requires the same analysis. This is contrary to the Board's view that an administrative law judge may weigh the evidence under each subsection separately, i.e., X-ray evidence at § 718.202(a)(1) is weighed apart from the medical opinion evidence at § 718.202(a)(4).

A. Chest X-Rays

A finding of the existence of pneumoconiosis may be made with positive chest x-ray evidence.[4] 20 C.F.R. § 718.202(a)(1). When weighing chest X-ray evidence, the provisions at 20 C.F.R. § 718.202(a)(1) require that "where two or more X-ray reports are in conflict, in evaluating such X-ray reports, consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays." 20 C.F.R. § 718.202(a)(1). Radiological qualifications of physicians include designations as being a "B-reader" and "Board-certified." A "B-reader" (B) is a physician, but not necessarily a radiologist, who successfully completed an examination in interpreting x-ray studies conducted by, or on behalf of, the Appalachian Laboratory for Occupational Safety and Health (ALOSH).[5] A designation of "Board-certified" (BCR) denotes a physician who has been certified in radiology or diagnostic roentgenology by the American Board of Radiology or the American Osteopathic Association. The Board has held that it is proper to accord greater weight to the interpretation of a B-reader or Board-certified radiologist

---

[4]"There are twelve levels of profusion classification for the radiographic interpretation of simple pneumoconiosis." *Lisa Lee Mines v. Dir.*, 86 F.3d 1358, 1359 n.1 (4th Cir. 1996) (*en banc*) (quoting N. LeRoy Lapp, *A Lawyer's Medical Guide to Black Lung Litigation*, 83 W.Va. Law Rev. 721 729-731 (1981)).
[5]*LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 n. 3 (3d Cir. 1995). *See* 20 C.F.R. § 718.202(a)(1)(ii)(E); 42 C.F.R. § 37.51.

A 0022

over the interpretation of a physician without these specialized qualifications. *Roberts v. Bethlehem Mines Corp.*, 8 B.L.R. 1-211 (1985); *Allen v. Riley Hall Coal Co.*, 6 B.L.R. 1-376 (1983); *see Mullins Coal Co. v. Dir., OWCP*, 484 U.S. 135, 145 n. 16 (1987); *see Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1276 n. 2 (7th Cir. 1993). Moreover, an interpretation by a dually-qualified B-reader and Board-certified radiologist may be accorded greater weight than a B-reader's interpretation. *Roberts v. Bethlehem Mines Corp.*, 8 B.L.R. 1-211 (1985); *Sheckler v. Clinchfield Coal Co.*, 7 B.L.R. 1-128 (1984); *Cannelton Indus., Inc. v. Dir., OWCP[Frye]*, Case No. 03-1232 (4th Cir. April 5, 2004) (proclaiming it's proper to accord more weight to radiologists' readings over non-radiologists). *Bethenergy Mines, Inc. v. Cunningham*, Case No. 03-1561 (4th Cir. July 20, 2004) (unpublished) (finding it's appropriate to accord greater weight to the X-ray interpretation of a dually-qualified reader over a B-reader).

In weighing X-ray evidence, a judge is not required to defer to the numerical superiority of X-ray evidence, although it is within his or her discretion to do so. *Wilt v. Wolverine Mining Co.*, 14 B.L.R. 1-70 (1990) (citing *Edmiston v. F & R Coal*, 14 B.L.R. 1-65 (1990)). This is particularly so where the majority of negative readings are by the most qualified physicians. *Dixon v. N. Camp Coal Co.*, 8 B.L.R. 1-344(1985); *Melnick v. Consolidation Coal Co. & Dir., OWCP*, 16 B.L.R. 1-31, 1-37 (1991).

There were five readings of four X-rays submitted into evidence.[6] While Employer had submitted an additional reading dated July 7, 2011, of the July 19, 2010, X-ray by Dr. Wolfe (EX-1), as Employer's counsel failed to submit the prerequisite Black Lung Evidence Summary Form which designates the use of such a reading in the adjudicatory scheme the undersigned has not considered it. ALJ-1; TR-7. Four readings, all by Dr. Ahmed, found the presence of pneumoconiosis. 20 C.F.R. § 718.102(b).[7] One reading, by Dr. Wolfe, did not find the presence of pneumoconiosis. Both physicians are both B-readers and Board-certified in radiology. Doctor Wolfe is a B-reader and Board-certified in Radiology. He is in practice at Conemaugh Medical Center. He has made several presentations and co-wrote several articles. DX-12. Doctor Ahmed is a B-reader and Board-certified in Radiology. He is licensed in four states and is currently an attending radiologist at both the Princeton Community Hospital and Bluefield Regional Medical Center in West Virginia. DX-13.

| Ex. # | Dates: 1. X-ray 2. Read | Reading Physician | Qualifi-cations* | Film Quality | ILO Classification** | Interpretation or Impression |
|-------|------|------|------|------|------|------|
| DX-12 | 7/19/2010 8/2/2010 | Wolfe | B/BCR | #1 | 0/0 | |
| DX-13 | 7/19/2010 3/29/2011 | Ahmed | B/BCR | #1 | 2/2 | |

---

[6]An additional reading by Dr. Navani of the 7/19/2010 X-ray was made on 10/19/2010 for quality purposes only. DX-12. He found that the X-ray was ranked as quality "#2."

[7]ILO-UICC/Cincinnati classification of Pneumoconiosis is the most widely used system for the classification and interpretation of X-rays for the disease pneumoconiosis. This classification scheme was originally devised by the International Labor Organization (ILO) in 1958 and refined by the International Union Against Cancer (UICQ) in 1964. The scheme identifies six categories of pneumoconiosis based on type, profusion, and extent of opacities in the lungs.

A 0023

| CX-2 | 3/2/2011 10/11/2011 | Ahmed | B/BCR | #1 | 2/2 | |
| CX-4 | 9/9/2011 9/11/2012 | Ahmed | B/BCR | #1 | 2/2 | |
| CX-3 | 10/18/2011 12/13/2011 | Ahmed | B/BCR | #2 | 1/1 | |

\* A-A-reader; B-B-Reader; BCR - Board Certified Radiologist; BCP - Board-certified pulmonologist; BCI – Board certified internal medicine; BCI(P) - Board-certified internal medicine with pulmonary medicine sub-specialty.
\*\*The existence of pneumoconiosis may be established by chest X-rays classified as category 1, 2, 3, A, B, or C according to ILO-U/C International Classification of Radiographs. A chest X-ray classified as category "0," including subcategories "0/-, 0/0, 0/1," does not constitute evidence of pneumoconiosis. 20 C.F.R. § 718.102(b). In some instances, it is proper for the judge to infer a negative interpretation where the reading does not mention the presence of pneumoconiosis. *Yeager v. Bethlehem Mines Corp.*, 6 B.L.R. 1-307 (1983) (Under Part 727 of the Regulations); *Billings v. Harlan #4 Coal Co.*, BRB No. 94-3721 (June 19, 1997) (*en banc*) (unpublished). If no categories are chosen, in box 2B(c) of the X-ray form, then the X-ray report is not classified according to the standards adopted by the regulations and cannot, therefore, support a finding of pneumoconiosis.

Based upon the overwhelming number of readings indicating the presence of simple, clinical coal workers' pneumoconiosis, given the equal qualifications of both Drs. Wolfe and Ahmed, the undersigned finds that Claimant has met his burden regarding establishing the existence of coal workers' pneumoconiosis pursuant to 20 C.F.R. § 718.202(a)(1).

### III. Cause of Pneumoconiosis

If a miner is found to have clinical pneumoconiosis, he must show that it arose, at least in part, out of coal mine employment. 20 C.F.R. § 718.203(a). If the miner who is suffering from clinical pneumoconiosis was employed for ten years or more in the coal mines, there is a rebuttable presumption that the pneumoconiosis arose out of such employment. 20 C.F.R. § 718.203(b); *Andersen v. Director, OWCP*, 455 F.3d 1102 (10th Cir. 2006). As a result, the burden shifts to the party opposing entitlement to present evidence sufficient to establish that the disease did not stem from employment in the mines. If a miner who is suffering or suffered from clinical pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of coal mine employment only if competent evidence establishes such a relationship. 20 C.F.R. § 718.203(c).

In the present case, the parties have stipulated that the miner had twenty four (24) years of aboveground coal mining employment, which is sufficient to trigger the rebuttable presumption. 20 C.F.R. § 718.203(b). As Employer has introduced no evidence to suggest that Claimant's simple, clinical coal workers' pneumoconiosis did not result from his employment in coal mines, Claimant has therefore met the burden required by 20 C.F.R. § 718.203(a) in proving the cause of pneumoconiosis.

### IV. Existence of Total Disability

Benefits are provided under the Act for, or on behalf of, miners who are totally disabled due to pneumoconiosis. 20 C.F.R. § 718.204(a). The claimant must show his total pulmonary or

- 9 -

A 0024

respiratory disability is caused by pneumoconiosis.    20 C.F.R. § 718.204(b).[8]    Section 718.204(b)(2)(i) through (b)(2)(iv) and (d) set forth criteria to meet this burden through:

      (i) pulmonary function studies with qualifying values;

      (ii) blood gas studies with qualifying values;

      (iii) evidence that miner has pneumoconiosis and suffers from cor pulmonale with right-side congestive heart failure;

      (iv) reasoned medical opinions concluding the miner's respiratory or pulmonary condition prevents him from engaging in his usual coal mine employment and gainful employment requiring comparable abilities and skills; and lay testimony.[9]

    Total disability may be established by a preponderance of qualifying pulmonary (ventilatory) function studies.    20 C.F.R. § 718.204(b)(2)(i).    Pulmonary Function Studies ("PFS") are tests performed to measure the degree of impairment of pulmonary function. They range from simple tests of ventilation to very sophisticated examinations requiring complicated equipment.  The most frequently performed tests measure forced vital capacity (FVC), forced expiratory volume in one-second ($FEV_1$) and maximum voluntary ventilation (MVV).  The quality standards for pulmonary function studies are located at 20 C.F.R. § 718.103 and require, in relevant part, that

      (1) each study be accompanied by three tracings, *Estes v. Director, OWCP*, 7 B.L.R. 1-414 (1984),

      (2) the reported $FEV_1$ and FVC or MVV values constitute the best efforts of three trials, and,

---

[8]The Board has held it is the claimant's burden to establish total disability due to CWP by a preponderance of the evidence. *Baumgartner v. Dir., OWCP*, 9 B.L.R. 1-65, 1-66 (1986); *Gee v. Moore & Sons*, 9 B.L.R. 1-4, 1-6 (1986) (*en banc*). 20 C.F.R. § 718.204 (Effective Jan. 19, 2001). Total disability and disability causation defined; criteria for determining total disability and total disability due to pneumoconiosis, states:

    (a) General. Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death.  For purposes of this section, any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis.  If, however, a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether a miner is or was totally disabled due to pneumoconiosis.

[9]Under this subsection, the administrative law judge must consider all the evidence of record and determine whether the record contains "contrary probative evidence." If it does, the Administrative Law Judge must assign this evidence appropriate weight and determine "whether it outweighs the evidence supportive of a finding of total respiratory disability." *Fields v. Island Creek Coal Co.*, 10 B.L.R. 1-19, 1-21 (1987); *see also Shedlock v. Bethlehem Mines Corp.*, 9 B.L.R. 1-195, 1-198 (1986), *aff'd on reconsideration en banc*, 9 B.L.R. 1-236 (1987). Notably, however, a finding of disability may not be based solely on lay evidence in a living miner's claim. *Tedesco v. Director, OWCP*, 18 B.L.R. 1-103 (1994).

(3) testing conducted after January 19, 2001 be accompanied by a flow-volume loop. 20 C.F.R. §§ 718.101(b) and 718.103(a) and (b).

To be qualifying, the regulations provide that the $FEV_1$ be qualifying *and* either (1) the MVV or FVC values must be equal to or fall below those values listed at Appendix B for a miner of similar gender, age, and height, or (2) the result of the $FEV_1$ divided by the FVC is equal to or less than 55 percent. 20 C.F.R. § 718.204(a)(2)(i)(A), (B), and (C). More weight may be accorded to the results of a recent ventilatory study over those of an earlier study. *Coleman v. Ramey Coal Co.*, 18 B.L.R. 1-9 (1993).

For example, for a seventy-one year old miner,[10] § 718.204(b)(2)(i) requires an $FEV_1$ equal to or less than 1.69. If such an $FEV_1$ is shown, there must be in addition, an FVC equal to or less than 2.20 or a ratio equal to or less than 55% when the results of the $FEV_1$ tests are divided by the results of the FVC test. Qualifying values are depicted in the table below. The $FEV_1$/FVC ratio requirement remains constant.

| Height | Age | $FEV_1$ | FVC |
|---|---|---|---|
| 68 | 73 | 1.69 | 2.20 |
| 69 | 73 | 1.79 | 2.31 |

The results of the pulmonary function testing admitted into evidence in this case are depicted below. There were additional pulmonary function testing results contained in a report appended to Dr. Fino's deposition (EX-2), but counsel for Employer failed to submit a Black Lung Evidence Summary Form indicating if such evidence was to be considered by the undersigned. ALJ-1; TR-7. All of the admitted testing "conformed."**

| Physician Date Exhibit # | Age Height | $FEV_1$ Pre/Post Broncho-dilator | MVV | FVC | $FEV_1$/FVC | Compre-hension/cooper-ation | Qualifying* | Impression |
|---|---|---|---|---|---|---|---|---|
| Begley 9/9/2011 CX-1 | 74 69" | 2.12 pre 2.19 post | | 3.23 pre 3.88 post | 65% pre 57% post | | Non-qualifying | |
| Schaaf 9/13/2012 CX-5 | 75 68" | 2.08 pre 2.51 post | | 3.04 pre 4.38 post | 63% pre 58% post | Good effort | Non-qualifying | Moderate pre-obstruction; mild post obstruction |
| Wolfe 11/10/2010 DX-12 | 73 68" | 2.15 pre 1.79 post | 53 49 | 3.25 pre 2.95 post | 66% pre 61% post | Fair/good | Non-qualifying | Submaximal /inconsistent effort |
| Zlupko 7/19/2010 DX-12 | 73 69" | 1.74 pre 2.35 post | 52 62 | 2.60 pre 3.30 post | 67% pre 71% post | Fair/good | Non-qualifying | Poor consistent effort |

*A "qualifying" pulmonary study or arterial blood gas study yields values which are equal to or less than the applicable table

---

[10] Although claimant is older than 71, extrapolation of FEV and FVC values for individuals over age 71 are not allowed. K.J.M. v. Clinchfield Coal Company, BRB No. 07-0655 BLA (2008).

A 0026

values set forth in Appendices B and C of Part 718.

** A study "conforms" if it complies to applicable standards (found in 20 C.F.R. § 718.103(b) and (c)). *See Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1276 (7th Cir. 1993). A judge may infer in the absence of evidence to the contrary, that the results reported represent the best of three trials. *Braden v. Dir., OWCP*, 6 B.L.R. 1-1083 (1984). A study which is not accompanied by three tracings may be discredited. *Estes v. Dir., OWCP*, 7 B.L.R. 1-414 (1984).

Appendix B (Effective Jan. 19, 2001) states "(2) the administration of pulmonary function tests shall conform to the following criteria: (i) Tests shall not be performed during or soon after an acute respiratory illness. . . ."

Appendix B (Effective Jan. 19, 2001), (2)(ii)(G): Effort is deemed "unacceptable" when the subject

[H]as an excessive variability between the three acceptable curves. The variation between the two largest FEV1s of the three acceptable tracings should not exceed 5 percent of the largest FEV1 or 100 ml, whichever is greater. As individuals with obstructive disease or rapid decline in lung function will be less likely to achieve the degree of reproducibility, tests not meeting this criterion may still be submitted for consideration in support of a claim for black lung benefits. Failure to meet this standard should be clearly noted in the test report by the physician conducting or reviewing the test."

*Id.* (emphasis added).

As none of the admitted pulmonary function studies "qualified", Claimant has failed to demonstrated the existence of a total pulmonary/respiratory disability pursuant to 20 § 718.204(b)(2)(i).

Total disability may also be established by qualifying blood gas studies under 20 C.F.R. § 718.204(b)(2)(ii).[11] Blood gas studies are performed to detect an impairment in the process of alveolar gas exchange. This defect will manifest itself primarily as a fall in arterial oxygen tension either at rest or during exercise. A lower level of oxygen ($O_2$) compared to carbon dioxide ($CO_2$) in the blood, expressed in percentages, indicates a deficiency in the transfer of gases through the alveoli which will leave the miner disabled. In order to be qualifying, the $PO_2$ values corresponding to the $PCO_2$ values must be equal to or less than those found at the tables of Appendix C. 20 C.F.R. § 718.204(b)(2)(ii). Notably, the tables at Appendix C do not permit "rounding up" or "rounding down" of the $PCO_2$ or $PO_2$ values; rather, each value must be "equal to or less than" the applicable table value. *Tucker v. Director, OWCP*, 10 B.L.R. 1-35 (1987). More weight may be accorded to the results of a recent blood gas study over one which was conducted earlier. *Schretroma v. Dir., OWCP*, 18 B.L.R. 1-17 (1993). The gas studies admitted into evidence are indicated below. There were additional was blood gas study results contained in a report appended to Dr. Fino's deposition (EX-2), but counsel for Employer failed to submit a Black Lung Evidence Summary Form indicating if such evidence was to be considered by the undersigned. ALJ-1; TR-7.

| Date Exhibit # | Physician | PCO₂* | PO₂ | Qualifying | Physician Impression |
|---|---|---|---|---|---|
| 9/9/2011 CX-1 | Begley | 28 (rest) 22 (exercise) | 75 (rest) 90 (exercise) | No No | |
| 7/19/2010 DX-12 | Zlupko | 34.6 (rest) 32.1 (exercise) | 80.1 (rest) 62 (exercise) | No Yes | |

*Results, if any, after exercise. Exercise studies are not required if medically contraindicated. 20 C.F.R. § 718.105(b).

---

[11]Twenty C.F.R. § 718.105 sets the quality standards for blood gas studies.

- 12 -

Appendix C to Part 718 (Effective Jan. 19, 2001) states: "Tests shall not be performed during or soon after an acute respiratory or cardiac illness."

Only one part of the blood gas studies, that of the exercise portion during the July 19, 2010, study, qualified under the regulations. Exercise studies can be more probative of miner's impairment, as they assess oxygen levels during physical exertion, which was required by claimant's last coal mine employment. *See Cline v. Cline Brothers Mining Co.,* BRB No. 05-0247 BLA (Oct. 31, 2005) (unpub.) ("The [ALJ] rationally found that the exercise values were more probative of claimant's ability to perform his last coal mine employment, because they assess oxygen levels during physical exertion"); *see also Wojtowicz v. Duquesne Light Co.,* 12 BLR 1-162 (1989) (the ALJ must weigh arterial blood gas study values yielded at rest and during exercise together, and explain his reason for crediting one study over another). Given the fact that pneumoconiosis is a progressive condition and should not improve over time, the undersigned finds that the more recent results are the most probative.[12] This is especially true since the subsequent testing was performed by Claimant's own expert, Dr. Begley. Accordingly, as the majority of blood gas studies do not qualify under the regulations, Pursuant to 20 C.F.R. § 718.204(b)(1)(ii) Claimant has failed to demonstrate the presence of a total pulmonary/respiratory disability.

Pursuant to 20 C.F.R. § 718.204(b)(1)(iii), Claimant may demonstrate the presence of a totally disabling respiratory impairment if "[t]he miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right-sided congestive heart failure . . .." 20 C.F.R. § 718.204(b)(1)(iii). In the present case, as there is no evidence of cor pulmonale, then a total pulmonary/respiratory disability has not been demonstrated pursuant to 20 C.F.R. § 718.204(b)(1)(iii).

Finally, where total disability cannot be established, under 20 C.F.R. § 718.204(b)(2)(i) through (iii), or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may be nevertheless found, if a physician, exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment, i.e., performing his usual coal mine work or comparable and gainful employment. 20 C.F.R. § 718.204(b)(2)(iv). Here, the administrative law judge is required to compare the degree of respiratory impairment diagnosed in the medical opinion with the exertional requirements of claimant's usual coal mine work. *Budash v. Bethlehem Mines Corp.,* 9 BLR 1-48 (1986) (en banc), aff'd, 9 BLR 1-104 (1986) (en banc). In order to do so, the administrative law judge must make a specific finding as to the nature of claimant's usual coal mine work and the physical requirements associated with that work. *Stanley v. Eastern Assoc. Coal Corp.,* 6 BLR 1-1157 (1984).

It is claimant's burden to establish the exertional requirements of his usual coal mine employment to provide a basis of comparison for the administrative law judge to evaluate a medical assessment and reach a conclusion regarding total disability. *McMath v. Director,*

---

[12] As pneumoconiosis is a progressive disease, it should either stay constant or get worse with time, but not improve. *Coleman v. Ramey Coal Co.,* 18 B.L.R. 1-9 (1993). *See also Gillespie v. Badger Coal Co.,* 7 B.L.R. 1-839 (1985); *Stanford v. Dir., OWCP,* 7 B.L.R. 1-541 (1984); *Tokarcik v. Consolidated Coal Co.,* 6 B.L.R. 1-166 (1983); *Call v. Dir., OWCP,* 2 B.L.R. 1-146 (1979).

*OWCP*, 12 BLR 1-6 (1988). Specifically, the exertional requirements from the miner's last coal mining job of one year's duration must be compared to the physical limitations noted by medical experts in this claim. Once it is demonstrated that the miner is unable to perform his usual coal mine work a *prima facie* finding of total disability is made and the burden of going forward with evidence to prove the claimant is able to perform gainful and comparable work falls upon the party opposing entitlement, as defined pursuant to 20 C.F.R. § 718.204(b)(2). *Taylor v. Evans & Gambrel Co.*, 12 B.L.R. 1-83 (1988). Judges may rely on physician reports which do not discuss the exertional requirements of a miner's work if the physician concludes that the miner suffers from no impairment at all. *Lane v. Union Carbide & Dir., OWCP*, 21 B.L.R. 2-34, 2-46, 105 F.3d 166, 172 (4th Cir. 1997). Furthermore, a medical opinion based on an invalid study may be rejected. *See Dir. v. Siwiec*, 894 F.2d 635, 639 (3d Cir. 1990) (cited with approval in *Lane*, 21 B.L.R. 2-34, 2-47, 105 F.3d 166 (4th Cir. 1997)).[13]

In the present case, Claimant's condition has been opined upon by a variety of physicians. Doctor Zlupko examined Claimant on behalf of Director on September 30, 2010. DX-12. Doctor Zlupko, a physician who is board-certified in Internal Medicine with a subspecialty in Pulmonary Medicine, diagnosed Claimant with severe to very severe coronary artery disease (CAD). DX-12. Additionally, Dr. Zlupko stated that Claimant had moderate to severe chronic obstructive pulmonary disease (COPD) due to smoking and occupational exposure to coal dust. DX-12. Doctor Zlupko stated that it was difficult to determine how much of Claimant's disability was due to COPD but that the majority was due to his CAD. DX-12. Doctor Zlupko did not specify what portion or percentage of Claimant's COPD was due to coal dust exposure as opposed to tobacco abuse. In his report, he did not specifically state whether Claimant could perform his past coal mining employment. DX-12.

Doctor Begley, who examined Claimant at his counsel's request on September 9, 2011, stated there was no X-ray evidence of simple or complicated pneumoconiosis. CX-1. Doctor Begley is board-certified in Internal, Critical Care, and Pulmonary Medicine. CX-1. He diagnosed Claimant as having an obstructive pulmonary impairment suggestive of pulmonary emphysema as demonstrated by the pulmonary function studies and a medical history of chronic bronchitis. CX-1. Doctor Begley stated that Claimant's chronic bronchitis was due to previous exposure to coal dust and tobacco use. CX-1. Doctor Begley, like Dr. Zlupko before him, did not specify what portion or percentage of his pulmonary impairment was due to coal dust exposure as opposed to tobacco abuse. While he concluded that Claimant should have no further exposure to coal dust, he did not specifically state whether Claimant could perform his past coal mining employment. CX-1.

Doctor Begley was deposed on February 26, 2013. CX-6. At his deposition, he reiterated that it is impossible to differentiate emphysema or COPD that is caused by cigarette smoking from that which is caused by coal dust inhalation. CX-6/p. 11. He further opined that Claimant's COPD and emphysema was caused by both cigarettes and coal dust inhalation as he was exposed to both; in other words, since he was exposed to both, both must have caused his

---

[13] In *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, Case No. 99-3469, 22 B.L.R. 2-107 (6th Cir. 2000), the Court held it was inappropriate to reject a physician's opinion which is based upon a non-qualifying pulmonary function study because the regulations permit a doctor to find a miner totally disabled even where PFS and/or AGS are medically contra-indicated.

pulmonary impairments. CX-6/p. 11. Doctor Begley did not opine regarding susceptibility to either agent impacting causation. On cross examination, Dr. Begley stated that coal workers' pneumoconiosis can be a progressive disorder that does not improve over time. CX-6/p. 19. He also admitted on cross examination that his and Dr. Schaaf's pulmonary function studies of Claimant showed reversibility (CX-6/p. 20), but maintained while not common, such reversibility could occur with obstruction caused by coal dust exposure. CX-6/p. 21. Doctor Begley's conclusion is that as long as a miner has a significant coal mine dust exposure history, that any pulmonary/respiratory condition the miner has will be due in part to such coal dust exposure. CX-6/p. 24. This seems to be his conclusion regardless of other factors such as susceptibility, cigarette smoking, etc. He did testify, however, as to the past coal mining jobs Claimant performed (CX-6/p. 8) and that Claimant would be unable to resume his past coal mining jobs due to Claimant's "significant" pulmonary impairment shown by his pulmonary function studies and resting blood gases. CX-6/pp. 14-15.

Doctor Schaaf, who examined Claimant at his counsel's request on September 13, 2012, stated that there was no X-ray evidence of any active airway disease. CX-5. Doctor Schaaf is board-certified in Internal Medicine with a sub-specialty in pulmonary medicine. CX-5. On reviewing the various X-rays contained in the record, he states that the majority have been read as negative with regards to clinical pneumoconiosis. CX-5. Doctor Schaaf diagnosed Claimant as having moderate chronic obstructive airways disease and chronic bronchitis. CX-5. Doctor Schaaf stated that with regard to smoking and coal dust exposure, "[b]oth are substantial contributing factors" of the pulmonary impairments. CX-5. Doctor Schaaf, after classifying Claimant's past coal mining jobs, concluded by stating that Claimant is unable to perform significant gainful employment for multiple reasons, including his chronic bronchitis and moderate obstructive airways disease, cardiac disease, and possible depression. CX-5.

Doctor Fino, who examined Claimant at Employer's request on March 22, 2011, stated there was no X-ray evidence of simple or complicated clinical pneumoconiosis. EX-2. Doctor Fino is board-certified in Internal Medicine with a sub-specialty in pulmonary medicine. EX-2. In his report, Dr. Fino reached a variety of conclusions. First, he found that there is insufficient medical evidence to justify a diagnosis of either clinical or legal pneumoconiosis. EX-2. Second, he states the Claimant has "severely reduced diffusing capacity and a moderate-mild obstructive abnormality with some reversibility" and that the reversibility is not consistent with a coal dust-related pulmonary condition. EX-2. Third, that Claimant has emphysema due to smoking. EX-2. Finally, after classifying Claimant's past mining jobs, Dr. Fino concludes that Claimant is disabled and unable to perform his last mining job from a respiratory standpoint caused by his past smoking, but that coal worker's pneumoconiosis did not contribute at all to his disability. EX-2.

Doctor Fino was subsequently deposed on September 19, 2012. EX-2. In his deposition, he reiterated that due to the fact Claimant's breathing improved with bronchodilators during pulmonary function studies rules out that his breathing problems are related to coal-dust and instead due to smoking. EX-2/p.12. He also stated that due to Claimant's breathing improving with exercise during pulmonary function studies was also inconsistent with damage done by coal dust inhalation. EX-2/p. 13. Because of these results, he opined that to a degree of medical certainty that Claimant had neither clinical nor legal pneumoconiosis but rather emphysema due

- 15 -

A 0030

to smoking. EX-2/p. 15-17. On cross-examination, Dr. Fino stated while coal dust may be responsible for a numerical reduction in Claimant's pulmonary function study results, it is not clinically significant and that he would be just as disabled even if he never worked in the coal mining industry. EX-2/p. 22.

Doctor Kaplan, who examined Claimant at Employer's request on October 18, 2011, stated there was no X-ray evidence of simple or complicated clinical pneumoconiosis. EX-3. Doctor Kaplan is board-certified in Internal Medicine with sub-specialties in pulmonary and critical care medicine. EX-3. Doctor Kaplan, in his report, concluded that Claimant has neither clinical nor legal pneumoconiosis but rather has COPD from cigarette smoking. EX-3. As he stated during his deposition, while Claimant is certainly disabled due to his coronary condition from returning to his mining job, coal dust inhalation plays no role in how disabled Claimant is. EX-3/p. 14. On cross-examination, Dr. Kaplan denied that Claimant was disabled due to a pulmonary condition. EX-3/p. 16. Also on cross-examination, Dr. Kaplan opined that coal dust inhalation contributes approximately ten percent (10%) to Claimant's COPD, emphysema, and chronic bronchitis. EX-3/p. 18. Regardless of the role coal dust inhalation in Claimant's pulmonary conditions, Dr. Kaplan opined that Claimant is not disabled from a pulmonary standpoint, but is disabled solely due to his coronary-related conditions. EX-3/p. 20.

In summation, Dr. Zupklo did not specifically state whether or not Claimant was totally disabled from a pulmonary/respiratory impairment and unable to perform his past mining work. DX-12. While Dr. Begley opined that Claimant would be unable to perform his past coal mining jobs due to his "significant" pulmonary impairment, he based this opinion on Claimant's pulmonary function studies and resting blood gases. CX-6/pp. 14-15. Dr. Begley's opinion is not supported by the objective diagnostic medical testing, as neither Claimant's pulmonary function nor resting blood gas results qualified under the regulations. Section IV, *supra*. Doctor Schaaf gave a litany of impairments that he felt precluded Claimant's ability to perform his past coal mining jobs – chronic bronchitis, moderate obstructive airways disease, cardiac disease, and possible depression – but does not state that from a pulmonary/respiratory standpoint alone that Claimant has totally disabled and unable to perform his past coal mining jobs. Doctor Fino concluded that Claimant is disabled and unable to perform his last mining job from a respiratory standpoint that caused by his past smoking and not coal worker's pneumoconiosis. EX-2, 3. Pursuant to 20 C.F.R. § 718.204(b), however, the causation of the total disability is not relevant at this point in the analysis, rather merely its existence. It is Dr. Kaplan, alone, who states that claimant has no pulmonary disability. EX-3/p. 16.

There is no doubt that Claimant is disabled from a cardiac standpoint. There is also no doubt that a large portion of claimant's pulmonary/respiratory problems are caused by his smoking. Where there is doubt is whether his pulmonary/respiratory impairments are significant enough alone to result in a total disability that would preclude his ability to perform his past coal mining jobs. But for Dr. Fino's opinion, an expert for Employer, that Claimant has a total pulmonary/respiratory disability which precludes his performing his past coal mining jobs, Claimant would have failed in meeting this burden of proof. Based upon a totality of the evidence, the undersigned finds that Claimant has proven the existence of a total pulmonary/respiratory disability pursuant to 20 C.F.R. § 718.204(b)(1)(iv) based upon the

- 16 -

A 0031

opinions of the various experts as to Claimant's ability, from a pulmonary/respiratory standpoint, to perform his past coal mining jobs.

*V. Cause of Total Disability*

Pneumoconiosis must be a "substantially contributing cause" to the miner's total disability. 20 C.F.R. § 718.204(c)(1). The regulations define "substantially contributing cause" as follows:

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1).

Because this claim was filed after January 1, 2005 and Claimant had 15 or more years of qualifying coal mine employment, the provisions at 20 C.F.R. § 718.305 are applicable.[14] Specifically, § 718.305 provides the following:

(a) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest X-ray submitted in connection with such miner's or his or her survivor's claim and it is interpreted as negative with respect to the requirements of Sec. 718.304, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that such miner's death was due to pneumoconiosis, or that at the time of death such miner was totally disabled by pneumoconiosis. In the case of a living miner's claim, a spouse's affidavit or testimony may not be used by itself to establish the applicability of the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where it is determined that conditions of the miner's employment in a coal mine were substantially similar to conditions in an underground mine. The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(b) In the case of a deceased miner, where there is no medical or other relevant evidence, affidavits of persons having knowledge of the miner's condition shall

---

[14]Revival of the 15 year presumption through Section 1556 of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (2010) (PPACA), is constitutional. *Muncy v. Elkay Mining Co.*, 2012 WL 893972, ___ B.L.R. 1-___, BRB No. 11-0187 BLA (Nov. 30, 2011); *Owens v. Mingo Logan Coal Co.*, 24 B.L.R. 1-__, BRB No. 11-0154 BLA (Oct. 28, 2011).

A 0032

be considered to be sufficient to establish the existence of a totally disabling respiratory or pulmonary impairment for purposes of this section.

(c) The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purposes of applying the presumption described in this section, shall be made in accordance with Sec. 718.204.

(d) Where the cause of death or total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or the evidence establishes that the miner does not or did not have pneumoconiosis, the presumption will be considered rebutted. However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

20 C.F.R. § 718.305.

Of relevance in this claim, as Claimant has 15 years or more of qualifying coal mine employment (as based upon the parties' stipulation of twenty four (24) years; Section I A, *supra*) and the medical evidence supports finding that the miner suffered from a totally disabling respiratory impairment (Section IV, *supra*), then rebuttable presumptions of disability and/or death due to coal workers' pneumoconiosis are invoked. Once invoked, the burden shifts to the party opposing entitlement to demonstrate by a preponderance of the evidence either: (1) the miner's disability does not, or did not, arise out of coal mine employment; or (2) the miner does not, or did not, suffer from pneumoconiosis.

If the party opposing entitlement meets this burden, then the presumptions are rebutted and Claimant is not entitled to benefits under 20 C.F.R. § 718.305. On the other hand, if the burden is not met, then Claimant is awarded benefits. The Board holds that standards for rebuttal under 20 C.F.R. § 718.305(d) are similar to the rebuttal standards at 20 C.F.R. § 727.203(b). *DeFore v. Alabama By-Products Corp.*, 12 B.L.R. 1-27 (1988). As the issue of whether Claimant has coal workers' pneumoconiosis was determined in section II A, *supra*, the single issue to be determined with whether Claimant's total disability arises from his coal workers' pneumoconiosis due to his past coal mine employment. To determine this issue, it is necessary to consider the documented and reasoned opinions of the experts involved in this matter.

To rebut the presumption that Claimant's total pulmonary or respiratory disability is the result of his past coal mine employment, Employer offers the reports and depositions of two physicians, Drs. Fino and Kaplan. While Dr. Fino admitted on cross-examination at his deposition that coal dust may be responsible for a numerical reduction in Claimant's pulmonary function study results, he maintained that it was not clinically significant and that he would be just as disabled from the damage caused by his smoking even if he had never worked in the coal mining industry. EX-2/p. 22. Doctor Kaplan, likewise on cross-examination at his deposition, opined that coal dust inhalation contributes approximately ten percent (10%) to Claimant's COPD, emphysema, and chronic bronchitis. EX-3/p. 18. It was Dr. Kaplan's opinion that Claimant does not have a pulmonary/respiratory disability. EX-3/p. 20.

A 0033

Both physicians, therefore, concede that they cannot rule out coal dust as a cause of at least part of Claimant's pulmonary/respiratory impairment – which Dr. Fino stated was disabling and Dr. Kaplan stated was not. Their position, however, is that the contribution of the damage to Claimant's pulmonary/respiratory functioning caused by coal dust inhalation is clinically insignificant compared to the damage caused by Claimant's continued smoking. Unfortunately for Employer, however, 20 C.F.R. § 718.305(d) provides that for the presumption of 20 C.F.R. § 718.305(a) to be rebutted, the cause of total pulmonary/respiratory disability cannot be due to in whole *or in part* to coal dust exposure from the miner's coal mine employment. 20 C.F.R. § 718.305(d). As neither physician can state that coal dust exposure is not responsible for at least a part of Claimant's pulmonary/respiratory impairment, the presumption at 20 C.F.R. § 718.305(a) is not rebutted. While they are undoubtedly correct that from a clinical standpoint Claimant's smoking is primarily responsible for his pulmonary/respiratory demise, the regulation does not provide for that fact alone to rebut the presumption. Claimant has therefore met his burden of proof with regard to establish coal workers' pneumoconiosis as a cause (albeit not sole) of his total disability pursuant to 20 C.F.R. § 718.204(c)(1).

## ATTORNEY FEES

The award of attorney's fees, under the Act, is permitted only in cases in which the claimant is found to be entitled to the receipt of benefits. Since benefits are awarded in this case, the Act allows the charging of a fee to Claimant for the representation services rendered to him in pursuit of the claim.

## CONCLUSION

In conclusion, Claimant established he has simple, clinical coal workers' pneumoconiosis, as defined by the Act and Regulations, arising out of his past coal mine employment, resulting in a total pulmonary/respiratory disability that was caused at least in part by his simple clinical coal workers' pneumoconiosis. He is therefore entitled to benefits.



Digitally signed by Drew A. Swank.
DN: CN=Drew A. Swank,
OU=Administrative Law Judge, O=Office
of Administrative Law Judges,
L=Pittsburgh, S=PA, C=US
Location: Pittsburgh PA

DREW A. SWANK
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the Administrative Law Judge's decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the Administrative Law Judge's decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478, 725.479. The address of the Board is: Benefits Review Board, U.S. Department of Labor, P.O. Box 37601, Washington, DC 20013-7601. Your appeal is considered filed on the

A 0034

date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board. After receipt of an appeal, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481. If an appeal is not timely filed with the Board, the Administrative Law Judge's decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

A 0035

## SERVICE SHEET

Case Name: **DAVIS_KENNETH_A_v_P_B_S_COALS_INC_DIR-_**

Case Number: **2011BLA06166**

Document Title: **DECISION AND ORDER AWARDING BENEFITS**

I hereby certify that a copy of the above-referenced document was sent to the following this 5th day of August, 2013:



Digitally signed by DARLENE M. ROTHERT
DN: CN=DARLENE M. ROTHERT,
OU=LEGAL TECHNICIAN, O=Office of
Administrative Law Judges, L=Pittsburgh,
S=PA, C=US
Location: Pittsburgh PA

**DARLENE M. ROTHERT**
**LEGAL TECHNICIAN**

District Director
Chief, Branch of Claims and Systems Mgmnt
U. S. Department of Labor
Room N3454, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Ground (UPS)}*

Associate Solicitor
U. S. Department of Labor
Division of Black Lung Benefits
Suite N-2117, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Regular Mail}*

Regional Solicitor
U. S. Department of Labor
The Curtis Center, Suite 630 East
170 S. Independence Mall West
PHILADELPHIA PA 19106-3306
          *{Hard Copy - Regular Mail}*

Kenneth A Davis
301 Walker Street
Box 208
GARRETT PA 15542
          *{Hard Copy - Regular Mail}*

PBS Coals Inc.
1576 Stoystown Road
P.O. Box 125
FRIEDENS PA 15541
          *{Hard Copy - Regular Mail}*

Sean Epstein, Esq.
38th Floor
One Oxford Centre
PITTSBURGH PA 15219
          *{Hard Copy - Certified Mail}*

Rockwood Casualty Ins. Co.
ATTN: Janice Gauntz
654 Main Street
ROCKWOOD PA 15557
          *{Hard Copy - Regular Mail}*

A 0036

**SERVICE SHEET** continued (2011BLA06166 Case Decision)    Page: 2

Heath M Long, Esq.
Pawlowski, Bilonick & Long
P.O. Box 658
EBENSBURG PA 15931-0658
        {Hard Copy - Certified Mail}